# CITY OF ELGIN
## v.
## JOHN JOSLYN.

*Municipal Corporations — Public Work—Contracts — Construction — Extras—Practice—Estoppel—*Remittitur—*Evidence.*

1. Where a contract contains general technical words appropriate to a particular trade, parol evidence from those familiar with the trade as to the meaning of the words is admissible.

2. In an action against a city for labor and material furnished under contract, this court declines to interfere with the verdict for plaintiff.

3. Where a city with which a person has contracted to do certain work within a certain time, takes the work out of his hands without his default, such person may quit the work and sue on the *quantum meruit.*

4. Where such contract provides that no extra work shall be allowed or paid for, unless done on the written order of the city engineer, and further provides that the contractor's claim for extra work must be made in writing within a certain time. the failure of the engineer to put his orders in writing will be considered a waiver of the right to insist on the contractor's putting his claim in writing.

5. In an action on such contract it is *held:* That the above provisions apply only to minor and unimportant changes incident to the contract, and likely to occur in carrying it out, and not to radical changes and departures from the plans.

6. The city can not wait until the extra work is completed before insisting on the contractor's complying with the above provision, but must do so when the work is ordered.

7. Assumpsit will lie for property wrongfully taken and converted to one's own use.

8. Courts will not reverse for unimportant errors in the progress of a trial, or in instructions which have not misled the jury, and do not affect the merits of the case.

9. Appellant can not assign as error the court's action in permitting appellee to remit part of the verdict before entering judgment thereon.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. BOTSFORD & WAYNE, for appellant.

Messrs. CHARLES WHEATON and A. H. BARRY, for appellee.

C. B. SMITH, J.  This was an action in assumpsit brought by appellee against appellant, to recover for work and material done and furnished in and about the erection and construction of the buildings connected with the waterworks belonging to the city of Elgin. The declaration contained only the common counts, to which was attached an itemized bill of particulars amounting to over $3,000.

The defendant interposed various pleas, under which the defense was made without question, and as no question arises on the pleadings no further attention will be given them.

A trial before the court and jury resulted in a verdict for the plaintiff Joslyn for $2,400.92. A motion for a new trial was made, and thereupon the plaintiff remitted $400.92 of the verdict, and the court then overruled the motion for a new trial, and gave judgment on the verdict, to all of which the city excepted. The city now brings the record here on appeal and asks for a reversal.

This controversy grows out of a written contract entered into between appellant and appellee on the 16th day of June, 1887, whereby appellee agreed with the appellant " to furnish all the labor and material required to do the excavation and mason work on the pump, well, the pumping station buildings, and the foundation and pedestal for the stand pipe of the Elgin City Water Works in accordance with the designs, plans and specifications, both general and special," and for this work and material the city agreed to pay appellee $11,311 in the manner provided for in the printed specifications.

Shortly after the execution of this contract, appellee entered upon the work. Soon after the work was begun, departures

and changes from the plans and specifications began, and these changes, both in the material used and in the construction of the work, continued to a greater or less extent during the progress of the work. The work was not finished within the time specified in the contract, and appellee insists that the frequent changes both in the manner of doing the work and in the material used, and the constant interference with him and his men by the officers of the city in the progress of the work was the sole cause of the delay. Appellee continued the work until the city had paid him, under the engineer's certificates, the whole contract price except $200, as he claims, but according to the claim of the city he was overpaid $267.48. Before the work was fully completed the city took possession of it, and took the work practically out of the hands of appellee and proceeded to finish it. The principal work, however, remaining to be done when the city took possession, related to the laying of sewer and suction and inlet pipes. This work the city completed and now seeks to charge the expense of this and other work it did, to appellee, and offset it against any claim he may have for extras. Appellee, however, denies that this work of laying sewers and pipes was in any manner included in his contract, and that it was not "mason work" which he was bound to do. In his bill of particulars appellee made only a claim of $200 for a balance due on his original contract, but upon the trial he abandoned that claim and sought only to recover for extras and extra labor and material furnished by him on account of the change in the work done under the direction and by authority of the city.

The defendant sought to meet and defeat this claim, 1st, by offsetting the damages it claimed by a failure on the part of appellee to do his work according to his contract, and within the time he was to do it; 2d, by charging the expense of completing the work, including the laying of sewers and pipes, to appellee; and, 3d, by showing that the work and material charged by appellee as extras were not extras; or if they were, that they were worth less than the amount claimed.

A preliminary question arises here upon the action of the court in admitting parol evidence from mechanics or persons

skilled in mason work to show whether the work of laying
sewer, suction and connecting pipes was included in the gen-
eral term " mason work." This evidence was admitted over
the objection of appellant, and it now insists the court erred
in admitting that evidence. In this we think there was no
error. We think the rule is general, if not of universal appli-
cation, that where writings or contracts contain general words
appropriate to particular trades or branches of business hav-
ing a technical signification or sense, as applicable to the
trade or business in which they are used, parol evidence may
be received from those who are familiar with the particular
trade or business as to the meaning of such words. Myers
v. Walker, 24 Ill. 133; McAvery v. Long, 13 Ill. 147; Brown
v. Brown, 8 Met. 576; 1 Greenleaf, Evidence, Sec. 280.

Nor is this submitting the construction of a contract to the
jury. It only submits to them the question of what the par-
ties meant by the use of the particular words under considera-
tion, from extrinsic evidence, and this must be submitted
to the jury, because it is a question of fact and not of law.

This evidence being properly admissible, the whole conten-
tion on the part of both parties was a mere question of fact
for the jury, and unless we can clearly see that they erred in
their finding or have been governed by prejudice or passion,
to the prejudice of appellant, we are not authorized to set
aside their finding.

The record in this case contains nearly one thousand
pages, mostly covered with a transcript of the evidence. The
two abstracts furnished us cover nearly two hundred printed
pages. Anything like a general review and discussion of
this immense mass of testimony would be utterly out of the
question in this opinion, and serve no useful purpose what-
ever. We shall content ourselves, and discharge our duty as
far as possible, by stating our conclusions only. We have
carefully read the evidence and think it supports and justifies
the finding of the jury. The evidence, in many instances, is
very conflicting, and it was for the jury to say where the truth
lay.

Upon the question as to the right of the defendant to

recover damages, by way of recoupment or set-off, for a fail-
ure on the part of appellee to complete his contract, it is
sufficient to say that the proof tends strongly to show that
the city took charge of the work and took it out of the hands
of appellee, or so far, at least, took it out of his control as to
justify him in abandoning it without his fault. If the proof
established such interference on the part of the city without
the fault of the defendant, then appellee would be justified in
quitting the work and suing on the *quantum meruit.* Guer-
don v. Corbitt, 87 Ill. 272. And the city in that case could not
recoup or set off for money expended in the completion of
such work without proof putting the defendant in default,
and showing that such default or neglect of the defendant to
do his work was not caused by the acts of the city in changing
the contract so as to require more time or work or material,
or improper interference on the part of the city with the
plaintiff in the progress of the work. There is a constant
conflict in the evidence as to whose fault caused the delay in
the completion of the work, and if damage resulted to the
city from that cause, we can not say, from the evidence, that
the city was so free from fault or responsibility as to make
appellee responsible to it for such damages. We think
one of the chief causes of the delay was the frequent changes
in the plans occurring at the request of the city. The jury
found specially that the defendant was not entitled to any
damages against appellee for the alleged non-performance of
his contract, and, also, that no amount should be allowed the
defendant under his plea of set-off. This finding of the jury
is strongly supported by the fact that appellant paid appellee
almost all, if not the entire price agreed upon for the entire
work, in its completed condition, according to his contract;
under the monthly certificate of appellant's engineer, stating
the work done and material furnished. Appellant insists that
appellee was overpaid the full contract price of the work by
the sum of $267.48, and the verdict of the jury supports appel-
lant in that regard. The contract required the appellant's
engineer to know what work was done and material furnished,
and appellee could not draw a dollar of his pay until the

engineer certified that he had earned it and was entitled to it. Appellant's present attitude, in claiming damages of appellee for failing to comply with his contract and failing to do his work as agreed, is in direct conflict with the certificates and estimates of its own engineer, who ordered appellee paid after a careful inspection of his work and the materials furnished under the contract.

It is also objected that the jury failed to answer directly and specifically one of the questions submitted to them to be answered in their special verdict. The question submitted was: "What amount, if anything, under the evidence, is the plaintiff entitled to have from the defendant for work, labor and materials done and furnished by him under his contract, and which are not included as extras?" The answer to this question by the jury was, "No amount is due the plaintiff under said contract except the extras, as stated in his bill of particulars."

We are not able to see the force of this objection. It is difficult to see how the jury could have more accurately answered the question.

It is again insisted that appellee can not recover for extras, no matter how many were furnished nor what their value, by reason of a clause in the general specifications relating to extra work, which provides: "No extra work will be paid for or allowed unless the same was done upon the written order of the engineer. * * * All claims for extra work must be made to the engineer, in writing, before the payment of the next succeeding estimate after the work shall have been performed, and, failing to do this, the contractor shall be considered as having abandoned his claim." The provisions of this clause are mutual. The proof is, in this case, that the engineer of the city and the city officers—the water commissioners—had the charge and supervision of this work, and were constantly proposing and requiring changes and departures from the original plans, and that many of these changes were of a material and important character, involving more expense than the original plans. One witness, at least, swears that the finished work could hardly be recognized by looking at the

original plans.   Under the provision in question, if the engi-
neer and city which he represented intended to enforce that
provision against the contractor, and avail themselves of its
benefits, then it was their duty also to obey it.   And it was
the duty of the engineer or the commissioners, when they
ordered extra work, to put it in writing themselves.   By the
strict letter of this clause no extra work is allowed to be done
except it is ordered by the engineer, in writing.   He is to
make the order, and must put it in writing, and his omission
to do his duty and comply with the contract can not be
invoked to aid the defendant; nor can the defendant omit to
comply with its part of the requirements of that clause, and
at the same time insist on a strict compliance with it on the
part of appellee.   The neglect of the defendant to keep its
part of that clause must be held to be a waiver of the right
to insist on the plaintiff keeping his part of it.

. But we do not think this clause in the general specifications
was ever intended by the parties to it to cover so many and
substantial and material changes from the original plan as
occurred in this work.  ·This clause was only intended and
must be held to apply to such minor and unimportant changes
as would be likely to occur in carrying out, and be incidental
to, the plans, and in fulfillment of them, and not to radical
changes and departures from the plans.   This construction
was placed upon a similar provision in a building contract by
the Supreme Court, in the case of Cook County v. Harms,
108 Ill. 151.   Aside from the foregoing considerations, we
are of opinion that the clause in question may be waived by
the acts of the parties.   The clause is highly penal, substitut-
ing the arbitrary judgment and decision of an engineer in the
employment of one of the parties in place of the judgment of
a court, and requiring all claims, big and little, for extra work
or material to be put in writing within a certain time, or all
claim for them forfeited.   It is strictly a "cut-throat" claim
in building contracts, liable to entrap the unwary contractor,
and if beneficiaries under such contracts intend to enforce
them, they should insist on it when they order the change, or
extra work or material; and upon failure to insist at the time

upon such compliance, then they will be estopped from insist-
ing upon such provisions after they have secured the labor
and material of the contractor.

It is further insisted that the plaintiff can not recover in
assumpsit for the wrongful conversion of appellee's tools,
machinery and material by the city. It is in proof that when
appellee quit the work, he left a lot of tools and material on the
ground where he had been doing the work and that when the
city took possession of the work they also took possession of
plaintiff's tools, machinery and material, and used them in the
completion of the work. For such material of appellee's as
was used and for such tools and machinery as were destroyed
by appellant and its servants in completing the work, appellee
charged up in his account against the city and recovered for
in this suit.

The claim of appellant is that unless the proof shows that
the wrongful taking of the goods was followed by the con-
version of the goods into money or money's worth, or a sub-
sequent promise was made to pay for them, the plaintiff can
not recover in assumpsit. Even under the language used in
the authorities relied upon by appellant, assumpsit will lie
under the proof in this case. Taking goods wrongfully and
keeping them and applying them to one's own use, and wearing
them out, as for example eating up a beef, or wearing out a rope
and derrick, or using lumber in building a house, would seem to
be equivalent to reducing property to money's worth. That is
precisely what the proof shows in this case appellant did with
appellee's tools, machinery and lumber. It took them, used
and wore them out and so made them equivalent to money.

But we understand that a tort may be waived and the
injured party may sue in assumpsit and recover the value of
his property wrongfully taken from him without reference to
what the wrong-doers may have done with the property.
And it was so held in F. W. & W. R. W. Co. v. Chew, 67
Ill. 376; 2 Greenleaf, Ev., Sec. 108, and note 3; Putnam v.
Wise, 1 Hill, 234; Lightly v. Conston, 1 Taunton, 112.

It is insisted by appellant that the jury erred in not allow-
ing appellant pay for finishing the work which appellee
agreed to do under his contract. The proof shows that the

City of Elgin v. Joslyn.

floor was not laid for the stand-pipe and pumping station and some work about the well, which was finished by the city, after appellee left the work.  There is also a claim made that the work on the stand-pipe was so changed, that appellant ought to have a credit.  The proof is clear that all these claims, if allowed, would not exceed the sum of $400, which amount was remitted from the verdict by appellee, thereby curing any error against appellant in respect to those items.

It is again urged that the court erred in giving instructions for plaintiff and in refusing instructions for the defendant.

We shall not discuss these objections in detail.  We have carefully examined the instructions given and refused and we have been unable to find any such error in any of them as to call for a reversal of the judgment.  While some of the instructions given for the plaintiff may be open to verbal criticism and lacking in technical accuracy in all respects, still they were not such omissions as were likely to mislead the jury.  The instructions taken as a whole considered together we think fairly and correctly declared the law to the jury. Indeed, the instructions given on behalf of the defendant were fully as favorable for it as the law would bear.  Courts will not and ought not reverse judgments for trifling and unimportant errors occurring in the progress of the trial or in instructions which have not misled the jury and do not affect the real merits of the case.

Finally and lastly it is urged as a ground of reversal that the court erred in permitting appellee to remit $400 of the verdict and thus meet the views of the court and avoid a new trial.

We can hardly think counsel serious in this objection.  The verdict was amply supported by the evidence before the *remittitur* and it was done in the interest of appellant and if it was error, appellant can not complain of it.

After a careful study of this long record, and a consideration of all the objections urged, we have been unable to find any substantial error in the record, and the judgment will be affirmed.  The additional abstract furnished by appellee we regard as unnecessary and it will be taxed to the appellee.

*Judgment affirmed.*