85   543
a187s316
85   543
110   ²220

## Chicago & E. I. R. R. Co v. Michael J. Moran.

1.  ESTOPPEL—*By Receiving the Benefit of an Unauthorized Agreement.*—Where a party has received the benefit of an unauthorized agreement and such agreement has been executed, and an equitable estoppel arises in favor of the party executing the agreement, the party receiving the benefit can not be allowed to repudiate an act by which the other has been led into a line of conduct prejudicial to his interests.

2.  WAIVER—*Of a Consent in Writing.*—Where a construction contract provides that no change shall be made in the materials to be used without the written consent of the engineer, such written consent may be waived by the conduct of the parties.

3.  BUILDING CONTRACTS—*Application to Extra Materials Furnished.*—Where a construction contract provided that the decision of an engineer upon disputes relative to the agreement should be final and conclusive on the parties, *it was held*, where extra work and materials of a different character from those specified in the contract were used, by a subsequent oral agreement, the provisions of the written contract did not apply.

**Petition for a Mechanic's Lien.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed November 21, 1899.

This is a petition for a mechanic's lien under the railroad lien statute, against appellant and one Chapman, as original contractor.

In April, 1892, appellant entered into a contract with Chapman for the construction of about forty-six miles of track between Danville and Momence, Illinois. Four days thereafter Chapman entered into a contract with Moran, the appellee, sub-letting to the latter a portion of the work. The sub-contract was identical with the main contract in reference to the masonry, and after providing that the rate should be for "first-class bridge masonry, eight dollars and fifty cents per cubic yard," contains the following:

"It is understood by the parties hereto that the foregoing prices of masonry are based upon the following agreement of the parties as to cost of and freight rates on stone to be used therein, to wit: That the necessary stone for said masonry can be secured from quarries at Williamsport and Independence, Indiana, at three dollars ($3) per cubic yard, and that the freight rate on such stone, from the quarries to the work will be fifty cents per ton; if the party of the first part is obliged to secure stone from quarries other than those mentioned above, and from such other quarries the rough stone costs more than three dollars ($3) per cubic yard, the party of the second part will pay the difference between three dollars ($3) per cubic yard and the cost of such stone, but no stone shall be secured from such other quarries without the written consent of the engineer of the second party. If the freight rate on stone secured from other quarries than those mentioned above is more then fifty cents per ton, the second party will pay, in addition to the prices above named, the excess of such freight rate above fifty cents per ton. If, on the other hand, other quarries are found from which the first party can secure satisfactory stone on which the freight rate from the quarries to the work is less than fifty cents per ton, the second party shall deduct such difference in freight rates on stone, from the prices above named."

It appears from the evidence that sandstone was the only kind of stone obtainable at these Indiana quarries, but as appellant's counsel states, it was found that stone from these quarries was unsatisfactory and other stone had to be used. Thereupon Moran, Chapman and one Baldwin, the chief engineer of the appellant company, got together in Bald-

win's office to discuss this stone question. Moran was finally directed by Chapman and Baldwin to procure stone from a Joliet quarry, and it was agreed that Moran should receive one dollar extra per yard for cutting the Joliet limestone over what he was to have received for the Indiana sandstone, and sixty-five cents a yard to cover the difference in the price of the Joliet over the Indiana stone.

In the latter part of November, 1892, there still remained a comparatively small amount of work to complete appellee's contract. This was the erection of the parapet walls of two bridges, which had been delayed, because when appellee was ready, the railroad company was not ready, and afterward for some reason it was not convenient for appellee to proceed at the time when the company was ready to permit the work to go on. Because of this mutual inconvenience an arrangement was made between Moran and the appellant company, with the consent of Chapman, whereby appellant agreed to complete the wall itself, using the stone which had been cut and provided for the purpose by appellee. For thus setting the stone in and erecting the parapet walls, appellee was to be charged by appellant three dollars a cubic yard.

Appellee testifies that he wanted the company to take the completion of this wall altogether off his hands, and enable him to get rid of the work, and that this Baldwin, the chief engineer of appellant, refused to do. He says that as the arrangement was made he was still to be accountable for the stone in that parapet wall and responsible for any that was missing or a misfit, until the completion of the work. The railroad company was to do only the mechanical work, and Moran was still to furnish the material, just as he would have done if he had with his own men laid the stone in the wall. He had already prepared the stone, and it was there upon the ground. He did no work himself and furnished no new material after December 1, 1892.

The railroad company completed the erection of the wall under its contract with appellee about the middle of December, and on the 17th settled in full with Chapman. The

latter stated his indebtedness under his contract with appellee to be $7,582.06. Without verifying this statement by inquiry of Moran, appellant settled with Chapman on that basis, retaining the amount which Chapman thus conceded to be due appellee, to be delivered to the latter upon the condition imposed by Chapman, that Moran should sign a receipt in full and a release discharging both Chapman and appellant from all further liability to Moran growing out of said contract.

Moran refused to sign such a release, and on December 27th, served a notice of lien upon the president of the railroad company.

Upon the hearing of the petition the Circuit Court decreed that appellee was entitled to the lien, and to the extra price as agreed upon for cutting the Joliet stone. The contractor, Chapman, abandoned the case apparently, pending the hearing in the trial court, and the railroad company brings the case here on appeal.

WILL H. LYFORD and ALBERT M. CROSS, attorneys for appellant.

FRANK O. LOWDEN, HENRY D. ESTABROOK and HERBERT J. DAVIS, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is first contended by appellant that the notice and copy of contract, required to be served in accordance with the railroad lien act (Rev. Stat. Chap. 82, Sec. 9), were not served upon appellant within twenty days after the completion by appellee of the work under his sub-contract with Chapman. It is contended that the arrangement made with Chapman's consent, between appellee and appellant, about November 23, 1892, in accordance with which appellant completed the parapet walls for Moran, operated as a termination and completion at that date of the sub-contract between appellee and Chapman.

The railroad company finished the work about the mid-

dle of December. The notice required to maintain appellee's lien was served upon appellant December 27th, and within the time required by statute, if it be considered that appellee's sub-contract with Chapman was not completed, until the appellant company finished, under its agreement with appellee, the construction of the parapet walls, which were included within said sub-contract.

If, on the other hand, the arrangement between appellant and appellee, made about November 23d previous, operated as a completion of appellee's sub-contract, because appellant agreed to finish the work itself with the material already furnished by appellee, then the notice served December 27th following, was not served within twenty days of the completion of the sub-contract.

There is no controversy "as to the dates, facts and circumstances of this transaction," as appellant's counsel concede. It is manifest that while Moran did not do any actual work under the sub-contract with Chapman after the arrangement of November 23d, or thereabouts, was made with the appellant company, still the work itself, as required by said sub-contract, was not done until finished by appellant about December 14th. Appellee's contract with Chapman was not completed until that date. It is evident also that his responsibility for a portion of the work, at least, did not cease until that date. According to evidence introduced in behalf of appellant, appellee was allowed for the material and the cutting of the stone composing the wall. All that the appellant company undertook was to lay the stone furnished by Moran in place, that is, erect the wall; and in making the arrangement as to price, Moran allowed, and the appellant company was to receive—deducting it from what, under the sub-contract, Moran was otherwise entitled to—three dollars a cubic yard for setting the stone. No arrangement was made that appellant should supply or cut or recut any stone in case of any deficiency or defect or misfit. It does not appear even that any investigation was made by appellant of the quantity or quality or condition of the stone. The company merely agreed

to set it in place, and all the other work and material agreed to be furnished by Moran under his sub-contract with Chapman he was still liable for until the whole was completed. He was not released from his contract by the arrangement with appellant and his liability thereunder did not end until the stone he agreed to and did furnish was actually in place and the parapet walls completed. This was not until about December 14th, and his notice of lien was served December 27th, within twenty days of the completion of the sub-contract.

There are other considerations which lead to the same conclusion. The railroad company clearly, under the arrangement with Moran, would not have been obliged to settle with Chapman, the original contractor, and pay him for the work Moran was to do until it was actually done, and it was thus ascertained that the stone Moran was furnishing was sufficient in quantity and in all other respects to comply with the contract. Appellant did not, in fact, settle with Chapman until December 19th, four days after the completion of the parapet walls, as required by the contracts.

When it did thus settle, Chapman admitted indebtedness to Moran, and appellant accepted his statement of the amount of that indebtedness without verifying its correctness, when, according to its own answer, it might have been put upon its guard by the condition which Chapman exacted to be complied with before Moran should be paid what Chapman admitted was due him, viz., that he should sign a receipt in full and a release of both Chapman and appellant from further liability.

It is urged that the Circuit Court erred in overruling certain exceptions to the master's report. These refer to an extra allowance to Moran for cutting 3,548.8 yards of Joliet stone at $1 per yard, and to the allowance of interest. The real contention is as to the allowance of anything extra for cutting the Joliet stone.

It is conceded that a verbal agreement was made between Moran, Chapman and one Baldwin, representing appellant

as its chief engineer, that Moran should receive this $1 per cubic yard for the 3,548.8 cubic yards of stone for which the allowance complained of was made.   Appellant's contention is that this verbal agreement is in contravention of the written contract between Moran and Chapman, and therefore void.   It is not denied that Moran proceeded under the agreement, in good faith, to furnish, and did furnish and cut, this quantity of Joliet limestone.

We perceive no reason why the railroad company could not agree—if it desired that Joliet limestone should be used instead of the Indiana sandstone called for by the contract—to pay Chapman, for Moran, the excess, or supposed excess, in cost of the former stone over the latter; nor why appellant could not make an explicit and binding agreement to pay the extra dollar per cubic yard in consideration of getting the Joliet stone.

It is urged, however, that the contract in writing between Chapman and appellee contemplated this very contingency, that it might become necessary to use other stone than that described therein, and provided just what extra compensation should be paid in such case, whether for Joliet or any other stone, and that no more can be recovered, notwithstanding the new verbal agreement.

The sub-contract contains a provision that if Moran "is obliged to secure stone from quarries other than those mentioned above, and from such other quarries the rough stone costs more than $3 per cubic yard, the party of the second part (Chapman) will pay the difference between $3 per cubic yard and the cost of such stone.   But no stone shall be secured from such other quarries without the written consent of the engineer of the second party."

The contract expressly distinguishes between the "cost of and freight rates on stone."   While the charge for freight in case stone was procured from other quarries was specified in the contract, the difference in cost of such stone was not thereby expressly fixed.   It was left to be ascertained when the contingency should arise.

It would appear that the use of Joliet limestone, involv-

ing extra expense in cutting over Indiana sandstone, was a contingency not contemplated when the contracts were drawn. This is indicated by the conduct of the parties. When the question arose, appellant's chief engineer did not claim that the appellee could be compelled to use Joliet stone under the contract. Such an idea seems not to have been suggested. We think it clear the parties themselves so construed the contract, and regarded the extra expense of cutting the Joliet limestone over the Indiana stone as not covered by the contract, and to be provided for by a new agreement. Else why was such new agreement made? It was made, and appellee in good faith furnished and cut the more expensive stone thereunder. Appellant received the benefit. The agreement having been executed, an equitable estoppel certainly arises in Moran's favor, and appellant can not now be allowed to repudiate its own act by which appellee was led into a line of conduct prejudicial to himself. Worrell v. Forsyth, 141 Ill. 22–30, and cases there cited.

Nor do we regard this conclusion as in any way affected by the provision of the contract relied upon by appellant, as follows: "The following are the full rates upon which this agreement is based, viz.: First-class bridge masonry, eight dollars and fifty cents per cubic yard." This provision of paragraph 7 of the contract is immediately followed by the portion of the contract wherein Chapman agreed to pay the difference in cost in case Moran was obliged to procure rough stone from "other quarries," costing more than the Indiana stone. This difference was to be over and above the "full rates," as stated in said paragraph 7, and it appears to have been so treated by the parties. The witness Dawley stated that sixty-five cents extra per cubic yard was allowed Chapman therefor by appellant. This difference was due Moran from Chapman under the sub-contract, and its correctness is not disputed. But it is over and above the original "full rates" of eight dollars and fifty cents per yard provided by the contract for first-class bridge masonry, and shows the construction

of that clause by the parties themselves, viz., that under certain conditions that price for the masonry was not to be the full rate.

We do not regard the authorities cited by appellant's counsel to show that "a written, sealed executory contract can not be modified by a parol agreement" as in point, under the facts.

The objection is made that there was no consent in writing by Baldwin, appellant's engineer, for use of the Joliet stone. It is conceded he did consent, and he not only consented for the railroad company but desired and directed it to be substituted for the Indiana stone. It was so substituted, and was accepted and used by the appellant. The objection is purely technical. The written consent must be deemed to have been waived by appellant's conduct. City of Elgin v. Joslyn, 36 Ill. App. 301.

It is again objected to the allowance for this Joliet stone, that it is in the contract provided that the decision of appellant's engineer on any dispute relative to the agreement shall be final and conclusive on the rights and claims of the parties.

But there was no dispute. By the construction of the contract made, as we have seen, by the parties themselves, the extra cost of cutting the Joliet stone was treated as outside of, and not controlled by, the written contract. It is only disputes relative to the written contract that the engineer's decision is to control. Where extra work and materials are of a different character from those specified in the contract, the provisions of the latter will not apply. City of Elgin v. Joslyn, 136 Ill. 525-531, affirming 36 Ill. App. above referred to.

If, however, it be conceded, for the sake of the argument, that it was within the province of appellant's chief engineer to determine whether the extra allowance for cutting Joliet stone was covered by the written contract, he did so determine that it was not when he made a new agreement w't Chapman and appellee that the latter should receive the extra dollar per cubic yard. More

over, he allowed the extra dollar on about nine hundred cubic yards. Under the clause in question his decision was made "final and conclusive" on the rights and claims of the parties. It would be equally conclusive upon both parties. He had no authority to make one decision to-day and change it to-morrow, after both parties had accepted and acted upon it in good faith. Moran had, in the meantime, procured and was using Joliet stone, and that clause could give Baldwin no power arbitrarily to set aside a "final and conclusive" award, in order to make another and different award upon the same point.

It is contended that the trial court erred in directing by its final decree that appellee be entitled to an order of payment of five thousand dollars held by appellant for Moran's use, with interest, or so much of said sum, with interest, as shall remain when any judgments or orders in certain garnishment proceedings then pending against appellant should be satisfied or the liability thereunder terminated. It appears that two attachment suits had been commenced against appellee and appellant had been garnisheed.

The five thousand dollars referred to is a balance of the money appellant had received from Chapman for payment to Moran. By an agreement between appellant and appellee, made while this suit was pending, appellant was to "hold said five thousand dollars for the sole use and benefit of said Moran, after the payment of any sum or sums it may be found liable for as garnishee in said attachment proceedings."

The petition prays for such general relief as the case may require. We see no reason why the court, having jurisdiction of the subject-matter and the parties, could not, under the pleadings and the evidence before it, settle the rights of the parties as to all matters relating to the litigation. Appellee ought not to be compelled to bring another suit to recover this five thousand dollars which the evidence shows is his money, due him on the sub-contract, and which appellant concedes it holds for his sole use and benefit, subject to the determination of the attachment and garnishment proceedings.

As to that portion of the decree requiring payment of interest on said sum by appellant, we think it erroneous to provide for such payment now, it appearing that the money is rightfully withheld by appellant for its own protection.   If, upon application for an order upon appellant under the decree, upon proper evidence of the discharge of appellant as garnishee, any reasons should appear for allowing interest, another question may arise.   Appellant could not be allowed to retain for its own benefit appellee's money without compensating him for its use or detention, but it does not at present appear that it has done so.   Until it does so appear it is premature, at least, to provide in the decree for the allowance of interest upon the money in question.   We do not regard it as necessary to remand the cause because of the error in that respect, which only affects a possible future order in the case.

If it becomes necessary for appellee to apply to the chancellor for an order requiring payment of this five thousand dollars, it will be time enough then for the court to determine whether or not appellant has become liable for interest.

For the reasons indicated the decree of the Circuit Court will be affirmed.