# W. H. Stubbings Co. v. World's Columbian Exposition Co.

1. BUILDING CONTRACTS—*Waiver of Written Order for Additional Work by Owner's Oral Request for Same.*—Where a building contract contains a condition that no payment for extra work or alterations shall be enforced by the contractor unless a written order is obtained from the architect before such work is commenced, and no such order is given, but the contractor performs such work upon the parol request of the owner, his architect or his authorized agent, then the owner waives this condition and a recovery can be had for work so furnished. Acceptance of the work done pursuant to such verbal order is equivalent to acquiescence in and ratification of the agent's act in giving the order.

2. SAME—*Extra Work Amounting to Radical Departure from the Terms of the Written Contract Amounts to a New Undertaking.*— Where by a contract plaintiff contracted to do only exterior work on a building, and thereafter by direction of and agreement with defendant or its duly authorized agent did interior work, such work is a new and substantially different undertaking, not provided for in the writing, and the provision of the written contract that allowance shall be made only for " such extra work and material as shall have been furnished under the written order " of the chief is not applicable to it.

3. SAME—*Owner of Building Must Keep it in Such a State of Forwardness as to Enable Contractor to Perform His Work Within Time Stipulated.*—Where the owner of buildings fails to have the buildings ready, so that plaintiff can proceed with the work within the time contemplated by its original written contracts, and wages advance thereafter so that the cost of the work to plaintiff is thereby enhanced, the owner is liable for damages for such delay.

4. SAME—*Contractor Need Not Abandon Work for Delay of Owner and Sue for Damages.*—Where the owner of buildings fails to have them ready for the contractor so he can finish his work within the stipulated time, the contractor is not obliged to abandon the work and sue for damages, but has the right to proceed to complete the work and then claim damages.

5. SAME—*Provision in Contract Making Architect's Decision Final and Binding as to All Controversies Construed.*—A clause in a building contract making the architect's decision final and binding as to all controversies arising, does not confer authority upon him to pass upon the question of damages resulting from a breach of such contract, and does not preclude the party in favor of whom such breach runs from recovering on account thereof.

6. INSTRUCTIONS—*Invading the Province of the Jury.*—An instruction to the jury that they are " at liberty to decide that the preponderance of the evidence is on the side which in their judgment is sustained

by the more intelligent and better informed, and the more credible and the more disinterested witnesses, whether these are the greater or the smaller number," is erroneous, as an invasion of the jury's province to determine for themselves what the weight of the evidence may be, and where it preponderates.

**Assumpsit,** on a building contract. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed October 30, 1903.

This is an action to recover for damages for delay, damages to the work while in progress, and for extra work, upon the Manufactures and Liberal Arts Building, the Horticultural Building and the Transportation Building of the World's Fair. Appellant's claim is set out in a bill of particulars as follows:

| | |
|---|---:|
| To priming on the interior of the Manufactures Building ordered by the superintendent, M. Updike, as per list of quantities hereto attached | $ 3,040.44 |
| To re-glazing broken windows ordered by Supt. M. Updike as per bill hereto attached | 1,125 17 |
| To extra price paid for labor caused by building not being ready for painting, as per terms of contract for same, caused by the advance in painters' wages at 10c per hour, net cost | 3,184.00 |
| To our profit on same, 10 per cent | 318.40 |
| To amount paid J. H. Rice Company for glazing as damages caused by building not being ready for glazing as per contract and as per bill hereto attached | 852.24 |
| To priming and second coating a portion of work not included in our contract same being ordered by Supt. M. Updike and approved by E. R. Graham, assistant chief of construction | 893.16 |
| To painting and glazing in the Manufactures Building on that portion of work damaged by the falling of walls, same being ordered by Supt. M. Updike and Agnew & Company, as per bill hereto attached | 983.49 |
| To damages for extra time on account of advance in wages, caused by work not being ready for us to complete as per terms of our contract for same for the Horticultural Building | 283.80 |

To damages for extra time on account of advance in wages, caused by work not being ready for us to complete as per terms of our contract for the Transportation Building . . . . .     518.20

$11,198.90

. There is a separate written contract between the parties for the work on each building. These are substantially alike in form, differing only in the descriptions of the buildings and the price. The material parts are set forth in appellee's brief as follows :

"The contractor agrees to do the painting and glazing according to the drawings and specifications prepared by Daniel H Burnham, chief of construction; to furnish all material and to protect the same from damage by the elements or otherwise, until the completion of the work; to enter upon the work as soon as directed by the chief and steadily proceed to completion as rapidly as possible and finish the work by the dates named.

In no case to proceed without first obtaining from the chief at his office directions and drawings for the proper execution of the work.

The work to be entirely at the contractor's risk until the same is accepted, and the contractor liable for its safety to the amount of money paid by the owner on account of the same.

The owner to pay upon written certificates issued by the chief as the work proceeds for a sum not exceeding eighty-five per cent, which said certificate shall be paid immediately upon presentation, and a final settlement as to the remainder and all extras, if any, shall be made and payment made forty days after the work shall have been completed, free from all claims and liens and charges whatsoever, and the chief shall have certified thereto in writing.

The owner reserves the right during the progress of the work to make or require to be made any alterations in the plans, materials or workmanship, that the owner may deem proper, and in case of any such alterations involving an increased or diminished expense, a just or equitable allowance be made to the contractor or the owner by the chief; and in case the alterations require additional time, a reasonable amount of additional time be given for the completion of the work; and the contractor expressly waives all claim or demand to any allowance for extra work or

materials that may be furnished, unless in each case such extra work or material shall have been furnished upon the written order signed by the chief; or his subordinate duly authorized.

Should delays be caused by other contractors, to the hinderance of the contractor, and it immediately gives notice to the chief of such delay, a just amount of extra time shall be allowed the contractor by the chief.

In case the parties can not agree as to the true value of extra or deducted work or the amount of extra time, or in case they disagree as to the true meaning of any covenant or agreement herein, the decision of the chief shall in each case be final and binding.

Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the chief and his decision be final and conclusive.

All designs, plans, etc., the contractor may have received, must be returned to the chief before the final certificate is given, and when the work is completed the contractor must notify the owner or its legally authorized agent that it is ready to have a settlement, and if the owner or parties interested have any bills to file or statements to make they must do so before the chief renders his final certificate, or makes adjustment between the parties."

The following clauses are part of the contract:

" Par. 4.   The chief of construction reserves the right to make any changes in the plans or specifications he may deem desirable.   Should any additional labor or materials be involved in such changes, the contractor shall be paid for supplying the same.   On the other hand, should such changes reduce the amount of labor or material, the contractor shall sustain an equivalent reduction in the contract amount.   Said chief of construction shall be the sole arbiter in determining the rates of increase or reduction that may be herein involved.   No claim whatsoever shall be allowed for extra labor or material over and above the contract amount, unless the same shall have been ordered in writing, stipulating the remuneration by the chief of construction.

Par. 7.   The work is entirely at the contractor's risk until the same is approved and accepted, and he will be liable for its safety.

Par. 18.   The sum of $50 per day shall be deducted from the contract price for each day the work is delayed in com-

pletion after the specified date. If, however, progress of the work shall be delayed by any cause beyond the control of the contractor, an extension of time may be made by the chief, but claims for such extension must be made in writing at the time of such delay, and the decision of the chief thereon shall be final and binding upon both parties.

The contractor further agrees to remove all improper materials and work when directed by the chief, and to substitute therefor such materials and work as in the chief's opinion are required by the drawings and specifications; to enter upon the performance of said work as soon as directed by the chief, and to steadily proceed with and hasten same to completion as rapidly as practicable, and to at all times give the chief and his assistants free access to all parts of the work."

The work upon the Manufactures Building was, by the written contract therefor, to be completed on or before May 9, 1892; that on the Horticultural Building on or before March 22, 1892, and the Transportation Building on or before April 2, 1892. Under the contracts for the last two buildings the penalty for default was $30 per day as liquidated damages, and $50 per day for the first of the buildings, as above mentioned.

The case has been tried twice in the Circuit Court, the first trial resulting in a verdict in favor of appellant which was set aside by the trial judge, and the second trial resulting in a verdict and judgment for appellee, from which this appeal is prosecuted.

PAM, CALHOUN & GLENNON, attorneys for appellant; ALBERT E. DACY, of counsel.

Where a building contract contains a condition that no payment for extra work or alterations shall be enforced by the contractor unless a written order is obtained from the architect before such work is commenced, and no such order is given, but the contractor performs such work upon the parol request of the owner, his architect or his authorized agent, then the owner waives this condition and a recovery may be had for work so furnished. City of Elgin v. Joslyn, 36 Ill. App. 301, 307; City of Elgin v. Joslyn, 136 Ill. 525; C. & E. I. R. R. Co. v. Moran, 85 Ill. App.

543, 551; C. & E. I. R. R. Co. v. Moran, 187 Ill. 316–324; Moran v. Schmitt (Mich.), 67 N. W. Rep. 323; Meyer v. Berlandi (Minn.), 54 N. W. Rep. 937; Fitzgerald v. Beers, 31 Mo. App. 356; Nixon v. Taff Vale Ry. Co., 7 Hare, 136; Michaud v. McGregor (Minn.), 63 N. W. Rep. 479; Erskine v. Johnson (Neb.), 36 N. W. Rep. 510; McLeod v. Genius (Neb.), 47 N. W. Rep. 473; Cunningham v. 4th B. Church, 159 Pa. St. 620; Porter v. Swan, 44 N. Y. St. Rep. 375; 17 N. Y. Supp. 351; Stout v. Jones, 9 N. Y. St. Rep. 570; Wood v. City of Ft. Wayne, 119 U. S. 312; Kennedy v. U. S., 24 Court of Claims, 122.

Such a building contract as the one at issue, implies an obligation on the part of the owner to keep the building in such a state of forwardness as to enable the contractor to perform his work within the time stipulated. For a breach of this duty the owner is liable to the contractor for extra cost of labor. The architect's decision has nothing to do with such a breach. Nelson v. Pickwick A. Co., 30 Ill. App. 333–6; M. A. M. E. C. v. Hearson, 41 Ill. App. 89–92; Kenwood v. Dunderdale, 50 Ill. App. 581–2; Tobey v. Price, 75 Ill. 645–7.

A provision in a building contract that no claims for extra work will be allowed unless furnished under a written order of the architect applies only to minor changes and does not cover radical departures from the plans and specifications. City of Elgin v. Joslyn, 36 Ill. App. 301–7; City of Elgin v. Joslyn, 136 Ill. 525–31; C. & E. I. R. R. Co. v. Moran, 85 Ill. App. 543–51; C. & E. I. R. R. Co. v. Moran, 187 Ill. 316; Cook County v. Harms, 108 Ill. 151–159.

A clause in a building contract making the architect's decision final and binding as to all controversies arising, does not confer authority upon him to pass upon the question of damages resulting from a breach of such contract, and does not preclude the party in favor of whom such breach runs from recovering on account thereof. Nelson v. Pickwick, 30 Ill. App. 333; M. A. M. E. C. v. Hearson, 41 Ill. App. 89–91; Frost v. Rand, McN. & Co., 51 Ill. App. 276–280; Lauman v. Young, 31 Pa. St. 306.

WALKER & PAYNE, attorneys for appellee.

An agent without authority to make, is without authority to unmake a contract, and there is no evidence of a waiver of the provisions in the contracts that there should be no allowance for extras over and above the contract price, unless ordered in writing by the chief of construction by any one authorized to waive, and such provisions must control in this case. Deaf & Dumb Institution v. Platt, 5 Ill. App. 567; Carson v. Mitchell, 41 Ill. App. 243; Clark v. Bird, 46 Ill. App. 583; Stuart v. City of Cambridge, 125 Mass. 102; O'Keefe v. Corporation, 59 Conn. 551.

The performance of the work by plaintiff, the rendering of monthly and final estimates and the issuance of vouchers thereon by the defendant, the acceptance of and receipting for the money paid in accordance with the vouchers by the plaintiff, all under and in accordance with the terms of the contract, estops the plaintiff from recovering for damages for delay, and is conclusive of a final settlement between the parties under said contracts of all claims of every kind and description. Coulter v. Board of Education, 63 N. Y. 366; Western Union R. R. Co. v. Smith, 75 Ill. 496; Graveson v. Tobey, 75 Ill. 540; O'Connor v. Smith, 19 S. W. Rep. 168; Flagg v. Dryden, 24 Mass. (7 Pick.) 52; Snow v. Inhabitants of Ware, 54 Mass. (13 Met.) 42; Cook County v. Sexton, 16 Ill. App. 93; Ashley v. Vischer, 85 Am. Dec. 65; 34 Cal. 322; Conant v. Kimball, 95 Wis. 550; Goss v. Ellison, 136 Mass. 503; Ostrander v. Scott, 161 Ill. 344; Lapp v. Smith, 183 Ill. 183; Fuller v. Kemp, 138 N. Y. 238.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Numerous alleged errors are complained of by appellant's counsel which relate to rulings of the trial court upon the admission of evidence, instructions given in favor of appellee and denying a motion for a new trial. It is insisted that the judgment is contrary to the weight of the evidence and to the law.

It is claimed in behalf of appellee that when the work was completed, appellant applied for final certificates as

contemplated by the contracts, and presented to the assistant chief of construction all of the claims involved in this suit, which were fully considered between the parties; that there had been a change in the plans of the Manufactures Building which caused a very material reduction in the amount of work as originally contemplated by that contract, amounting, it is said, to $10,320.58; and that upon consideration of the claims of appellee for a deduction of this sum from the original contract price, and of the claim of appellant for extra work and damages amounting to about $11,198.90, a compromise and settlement were effected by virtue of which appellee allowed and paid, and appellant accepted the full original contract price, without any reduction for the work not done; and that this was accepted by appellant as a settlement in full of the demands under that contract, to recover which this suit is brought. It is claimed by appellee, therefore, that the final certificate or voucher then paid by appellee was in satisfaction of all claims and demands between the parties, and a bar to future actions by either party, upon these unliquidated demands. On the other hand, appellant's claim is that the changes in the Manufactures Building, instead of causing a reduction in the amount of work originally contemplated by the contract, compelled appellant to perform work and furnish material to the extent of $2,485 more than was called for by the original contract, plans and specifications. This is a question of fact upon which evidence is conflicting. 'It may be said, however, that the voucher and receipt introduced in evidence refer by their terms to the contract, and do not purport to be in settlement of anything but the written contract.

Appellant's claims, as stated, arrange themselves in two general classes, and it will not be necessary in the view we take of the controversy to consider in detail the items for which recovery is sought. The first class includes claims for extra labor and material not embraced in the contract specifications, but afterward ordered by appellee's agents in charge of the work; and the second, claims for damages

caused mainly by advance in wages, which would not have affected appellant, except by reason of appellee's failure to have the buildings ready for appellant to proceed with its work before the expiration of the time provided for its completion in the written contracts.

Under the first of these heads comes the claim for priming on the interior of the Manufactures Building. The contract with appellant for that building called only for work to be done on the exterior. It is, however, claimed by appellant that it put one coat of paint upon the interior pursuant to an oral request made by Mr. Graham, the assistant director of works and assistant chief of construction, who had been put in charge of the buildings and gangs employed thereon, by a written order of his chief, Mr. Burnham, the director of works and chief of construction. The trial court excluded evidence offered to prove this alleged oral contract and what was said with reference thereto between the parties, as well as testimony tending to prove that appellant had not been paid for that work. The same ruling was applied when appellant sought to show what agreement was made by the assistant chief about payment for a lot of broken glass replaced by appellant; and it is contended that this testimony was competent and should have been admitted. The court's ruling excluding this evidence is sought to be justified by appellee's attorneys on the ground that evidence tending to show oral orders given or agreements made was properly excluded because the parties who gave them were not shown to have had authority to make any such new contract and bind appellee. There seems, however, to be no dispute that appellant did put this coat of paint on the interior of the building, and did replace a quantity of broken glass.

Prior to the informal opening day, appellant was directed to have all the glass set in the Manufactures Building. This was done. On that day the building was occupied by thousands of people, and a large quantity of the glass appears to have been broken. Appellant resumed work the next day and it is said was directed to, and did, replace this broken glass.

It appears that Mr. Graham was assistant director of works, and was, by written order from Mr. Burnham, who was the director of works for appellee, instructed to "assume charge of all buildings and gangs employed on the same," and it was ordered that "superintendents in this service will report directly to him." It is conceded that Graham was thereafter on the grounds of the defendant company supervising the work and superintending the construction of the buildings, apparently acting with full authority of and from Mr. Burnham, his chief, who is, in the contracts under consideration, spoken of as "Chief of Construction," his official title being "Director of Works." Graham, his "Assistant Director of Works," acted under Burnham's orders as assistant chief of construction in actual charge of these buildings.

It is said by appellee's attorneys that there is no evidence of "express authority in Graham or Updike to make a contract." Updike was superintendent of construction of the Manufactures Building under Graham. The original written contract provided that the contractor waived all claims to allowances for extra work unless "furnished upon a written order signed by the chief or his subordinate duly authorized." The contract therefore contemplated allowances for extra work upon a written order signed by Graham as assistant chief, if the latter was "duly authorized;" and it will scarcely be seriously contended that the order placing him in charge of the buildings and men employed thereon and requiring the superintendents in the building service to report directly to him, was not an authorization to represent and act for the chief in reference to such extra work and materials as should become necessary to supplement the contract and properly complete the work on the buildings which the contract contemplated. If he had authority to give such order in writing, but gave it orally instead, and the work and material were furnished accordingly and accepted by appellee, the requirement that the order should be in writing will be deemed to have been waived. As said in City of Elgin v. Joslyn, 36 Ill. App.

301, if it was intended to enforce the requirement of a writ-ten order against the contractor, it was the duty of appel-lee's agent to comply therewith himself. The neglect to do so must be regarded a waiver of the requirement. C. & E. I. R. R. Co. v. Moran, 85 Ill. App. 543, affirmed in 187 Ill. 316–324.

Acceptance of the work done pursuant to such verbal order is equivalent to acquiescence in and ratification of the act of the agent in giving the order.

But some part, at least, of the extra work for which appel-lant seeks to recover is apparently not within the terms of the written contracts. If by a contract appellant contracted to do only exterior work on a building, and thereafter by direction of and agreement with appellee or its duly author-ized agent did interior work, this was evidently a new and substantially different undertaking, not provided for in the writing; and the provision of the written contract that allowance shall be made only for "such extra work and material as shall have been furnished under the written order" of the chief, is not applicable to a new and different contract containing no such provision. City of Elgin v. Joslyn, 136 Ill. 525; C. & E. I. R. R. Co. v. Moran, *supra;* Cook County v. Harms, 108 Ill. 151; Wood v. City of Ft. Wayne, 119 U. S. 312–320.

We conclude, therefore, as to the first class of appellant's claims, that it was competent to introduce evidence tending to show what the verbal orders and agreements were, in pursuance of which work not covered by the original con-tracts was done, and that it was error to exclude such evi-dence.

The second class of claims for which appellant sues is for damages alleged to have been suffered by the failure of appellee to have the buildings ready, so that appellant could proceed with the work within the time contemplated by its original written contracts. This time expired under the three contracts respectively March 22, April 2 and May 9, 1902. It is claimed and there is evidence tending to show that none of these buildings were ready so that

the contract work could be completed within the time specified, and that wages advanced thereafter, so that the cost of the work to appellant was thereby enhanced. It is claimed that appellant suffered loss by reason of the delay in getting the buildings in readiness for the performance of the contracts within the time specified. The propriety of an allowance of claims for damages for such delay, when supported by the evidence, has been recognized. Tobey v. Price, 75 Ill. 645–647; Michigan Avenue M. E. Church v. Hearson, 41 Ill. App. 89–92. And the contractor was not obliged to abandon the work and sue for damages, but had the right to proceed to complete it and then claim damages.

There is, however, a provision of the contract that in case of such delay, written notice must be given to the chief at the time, and the chief shall allow a just amount of extra time, and in case the parties disagree as to the true value of extra or deducted work, or the amount of extra time, or the true meaning of any covenant or agreement in the contract, the decision of the chief as to all these matters shall be final and binding.

It is contended, however, by appellee, that the stipulation in the contracts that if delays are occasioned by other contractors additional time will be allowed within which to complete the work, by implication means that there is to be no pecuniary compensation on account of damages suffered by such delays. It is conceded that there was delay, and it does not seem to be denied that wages rose in the mean time, and that it cost appellant considerably more on that account to perform its contracts. The provisions of the contract referred to do not purport to authorize the chief to determine what, if any, damages the contractor might suffer from such delay. The question is not as to the amount of extra time to be allowed the contractor. There might be no contention as to such allowance, and yet the contractor might be seriously damaged by a rise in the cost of material and labor, possibly to such an extent as to cause him absolute loss. We are of opinion

that the language used in the contract did not submit this question of damages to the decision of the architect or chief. Nelson v. Pickwick, 30 Ill. App. 333; Mich. Ave. M. E. Church v. Hearson, 41 Ill. App. 89; Frost v. Rand, McNally & Co., 51 Ill. App. 276.

The court instructed the jury at the instance of appellee's counsel that appellant was not entitled to recover for priming on the interior of the Manufactures Building, if such claim was in good faith considered by the chief of construction or his assistant, whether allowed or disallowed by him or his assistant. As we have said, it does not appear that this interior priming nor the replacing glass broken without any fault of appellant was included or contemplated in the provisions of the contract. These appear to have been matters entirely outside of the contracts, and if so, they were clearly not among the things thereby submitted to the decision of the chief or his assistant.

The jury were also instructed that they were " at liberty to decide that the preponderance of the evidence is on the side which, in their judgment, is sustained by the more intelligent and better informed, and the more credible and the more disinterested witnesses, whether these are the greater or the smaller number." This instruction has been often condemned. A witness may be more intelligent and better informed, more credible and more disinterested than others, and if this is found to be so, then the jury are told that as a matter of law the preponderance of the evidence is on the side sustained by such witness, no matter how much testimony there may be on the other side. This is an invasion of the jury's province to determine for themselves what the weight of the evidence may be, and where it preponderates. Chicago City Ry. v. Keenan, 85 Ill. App. 367, and cases there cited; L. N. A. & C. Ry. Co. v. Shires, 108 Ill. 617-632.

We have noted appellee's argument to the effect that in this case the instruction is not subject to the objections, such as were found to exist in the cases cited, but are unable to concur in the view that it was not improper in the case at bar.

We have not undertaken to consider in detail all the points discussed in the somewhat voluminous briefs, but to express our views rather upon the general principles which should in our opinion govern in deciding the issues involved.

The judgment of the Circuit Court must be reversed and the cause remanded.