HOLLAND EMSLIE and RICHARD EMSLIE, Respondents, *v.* EDWARD
LIVINGSTON, Appellant.

*Building contract — a written adjustment of differences between the parties thereto is
conclusive in the absence of fraud — what is an unliquidated claim.*

Where differences between the parties to a contract for the building of a house
result in an adjustment of accounts, in evidence of which the contractors exe-
cute a writing stating an amount received by them and the balance due, namely,
$4,046.23, and adding, " leaving the utmost that we can call upon you to pay
us four thousand and forty-six 23-100 dollars, less the value of " certain mate-
rials on the premises, the value of which was to be credited to the owner, and
concluding with the statement, " All extras have been adjusted between us,
and no more will be charged to you unless you order them in writing," the
contractors cannot, in an action subsequently brought by them against the
owner, show that bills which were rendered prior to the settlement, and were
partly for extra work done by them, were not included in the original contract
and were not adjusted by the compromise agreement, there being no proof of
fraud or misrepresentation sufficient to invalidate the compromise agreement.

Where no fixed price is stated in a contract for the performance of work, but
there is a limit beyond which the party ordering the work cannot, by the terms
thereof, be held liable, the claim for work done thereunder falls within the
category of an unliquidated demand.

APPEAL by the defendant, Edward Livingston, from a judgment
of the Supreme Court in favor of the plaintiffs, entered in the office
of the clerk of the county of Orange on the 1st day of April, 1898,
upon the report of a referee.

*L. Laflin Kellogg* [*Alfred C. Petté* with him on the brief], for
the appellant.

*John Miller,* for the respondents.

GOODRICH, P. J.:

The defendant was the owner of certain premises at Highlands,
in the county of Putnam. There was on the premises a house
partly built by a contractor who had failed to complete his contract.
On February 29, 1896, the defendant made a written contract with
the plaintiffs, whereby they agreed to complete the house according
to annexed plans and specifications, the work to be completed on
May twenty-fifth. " The work to be done on the basis of actual net

cost for material and labor, and ten per cent profit." The plaintiffs guaranteed that the total cost should not exceed $12,596, including the ten per centum profit. They also agreed to do what work was necessary to complete the stable in accordance with the specifications and plans, "for actual cost and ten per cent, as in the case provided for the house." The first payment was to be made for work done to April first, as soon as account and vouchers were examined and approved, less ten per centum to be retained till final settlement. A second payment was to be made on May first, on the same basis, and the third and final payment on completion and acceptance of the whole work. The plaintiffs began their work, and on March thirty-first rendered an account amounting to $3,398.25, which the defendant paid. A second account was rendered on May first, amounting to $4,480.05, from which was deducted $809.79 for a bill of J. L. Mott & Co., included in the account, which had been paid by the defendant, and the balance of $3,670.26 was paid.

On June first the plaintiffs rendered two other accounts for $3,263.27 and $180.92, and these were included in a subsequent account rendered on June ninth, amounting in all to $5,222.63. The defendant declined to pay the account of $3,263.27, and the plaintiffs stopped their work and removed their materials from the premises. Negotiations between the parties followed which, as the defendant contends, resulted in a settlement of differences, and on or about June tenth several papers were executed in evidence of the adjustment. One of them, signed by the plaintiffs, stated that by the original contract they had agreed to finish the house at a sum not exceeding $12,596, and had received on account $8,459.77, leaving a balance due of $4,046.23, "leaving the utmost that we can call upon you to pay us four thousand and forty-six 23/100 dollars, less the value of" certain materials which were on the premises, the value of which was to be credited to the defendant. There was also some difference on account of mantels, which apparently was afterward adjusted between the parties at $37.90 due the plaintiffs. The paper concludes with the statement, "All extras have been adjusted between us, and no more will be charged to you unless you order them in writing."

The second paper stated that when the plaintiffs returned the removed materials the defendant should pay them $1,000 "towards

the contract amount due on the work and material done on and furnished for said house." This payment was made on June fifteenth.

The third paper was a bond of the plaintiffs to carry out the first described of the three papers.

A fourth paper was signed by the plaintiffs in which they acknowledged receipt of $473.56, which was stated to be "for the work done and material furnished at house and stables," the items being given of work to both house and stable. This document contained a clause stating that, in consideration of one dollar, "we hereby waive and relinquish any other claim we may have for extra work."

A fifth paper was signed by Mr. Anthony, the attorney of the defendant, which stated that he had received from the defendant three checks, for $473.56, $226.16 and $2,300, amounting in all to $2,999.72, which he was to deliver to the plaintiffs upon the return of the materials removed by them, and these checks were delivered to the plaintiffs on June thirteenth. This check for $226.16 seems to have been intended as payment for another bill which was rendered by the plaintiffs on June first for work done on the stable. There is also a receipt of the plaintiffs for $1,000 dated June fifteenth.

Thus it appears that of the amount of $4,046.23, stated in the plaintiffs' memorandum of June sixteenth, there was paid $3,300, leaving due the $746.23, which was the "utmost" that could be claimed by the plaintiffs. This was subject to some further deductions not necessary to be considered here.

During June and July several written orders were given by the defendant for work on the house and stable, to cost respectively seven dollars, one dollar, forty-two dollars and seventy cents, four dollars and four dollars and fifty cents, amounting in all to fifty-nine dollars and twenty cents. All of them were written on one sheet, which contains a statement signed by one of the plaintiffs, "I shall hold my men responsible for any work done outside of that included in contract unless order is given on this sheet and signed by architect."

The plaintiffs subsequently did other work on the premises and claimed that they had fulfilled their contract, which the defendant denied, and this action was commenced. The complaint set up the execution of the contract of February twenty-ninth, of which a copy

was annexed, alleged performance and the failure of the defendant to pay the moneys due thereon; that the defendant was indebted to the plaintiffs for the work, labor and services, care and diligence of those plaintiffs and their servants, and for material in completing the house and stable of the defendant and for extra work and materials for the doing of other work and performing other services and supplying other materials amounting to $17,304.73. It also alleged a further indebtedness of $1,730.42, being the ten per centum named in the contract. The plaintiffs did not allege any payments on account, but demanded judgment for $7,057.36 and interest.

The answer denied that the plaintiffs had completed their contract and set up the transaction of June tenth as a settlement and adjustment of accounts; that of the $4,046.23 named in the papers then executed payments of $3,448.87 had been made, and as a counterclaim alleged the loss of the use of the premises by reason of the failure of the plaintiffs to complete, amounting to $1,179.87, and that by the agreements of June tenth the total amount of extra work done or to be done was fixed at $473.36, which was paid.

The issues were referred. The referee has written no opinion, and we are in doubt as to the reasons for his decision. He finds, however, the making of the contract of February twenty-ninth; that the plaintiffs have substantially fulfilled the same except as modified by subsequent agreements between the parties; that the defendant is indebted for work on the house named in the plans and specifications, $12,596, and "for work on stable and extra work not in the contract," $4,432.30, with ten per centum on the same, $443.23, amounting to $4,875.53, these sums amounting to $17,471.53, upon which has been paid $12,890.25, leaving due $4,581.28, for which sum with interest he directed judgment for the plaintiffs. He makes no reference to the transactions of June tenth.

It is very evident from the report of the referee that he has entirely ignored the effect of the transactions of June tenth, which seem to us to form a settlement and adjustment of all matters between the parties up to that date, and to be the basis upon which the rights of the parties are to be determined. There had been a disagreement between them as to whether the original contract had been performed; negotiations ensued between the parties and they adjusted their accounts up to that date on a new basis. For all

transactions prior to that date the accounts between them were adjusted and agreed upon. But the referee permitted evidence to be introduced by the plaintiffs showing that in the bills which were rendered on March thirty-first, May first and June first and ninth, there were about a hundred items which were partly for extra work done by the plaintiffs and which were not included in their contract and not adjusted by the agreements of June tenth. Of these items in reference to which evidence was admitted, one may be given as an example. In the account of March thirty-first was. an item, " Labor at building from Mar. 2 to April 1, 1896, $339.50." The evidence of the plaintiffs was received over the objection and exception of the defendant, to show that this item included " $84 of extra work  *  *  *  not called for by the specifications." The admission of such evidence constitutes reversible error. Part of this work thus held to be extra work was evidently work done upon the house, irrespective of other work done upon the stable. But the parties on June tenth agreed that the " utmost " amount due from the defendant for all such work done upon the house was $4,046.23. This included all bills which had been rendered up to that date. The evidence which the referee thus admitted violated· plain principles of law.

It is well settled that where a demand is unliquidated and where there is a *bona fide* disagreement in regard to a debtor's liability, the law favors an adjustment of such controversies without judicial intervention. (*Fuller* v. *Kemp*, 138 N. Y. 231.)

In *Nassoiy* v. *Tomlinson* (148 N. Y. 326, 330) the court said: " If the claim is unliquidated, the acceptance of a part and an agreement to cancel the entire debt, furnishes a new consideration which is found in the compromise. A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

The record shows that the case at bar falls within the category of unliquidated demands. There was no fixed price in .the contract for the performance of the work, but there was a limit beyond

which the defendant could not be held liable.    There was a *bona fide* dispute between the parties as to the meaning of the contract and the amount due thereunder, and the parties met and adjusted the amount due.    The plaintiffs executed agreements which stated such amount, and they agreed that they could not and would not demand any greater sum.    The plaintiffs cannot be permitted, in the absence of fraud or misrepresentation, to invalidate this agreement of compromise, which seems to have been executed after careful consideration.

The judgment must be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and new trial granted before a new referee to be appointed at Special Term, costs to abide the event.