EMSLIE et al. v. LIVINGSTON.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

1. COMPROMISE AND SETTLEMENT—ADJUSTMENT OF ACCOUNTS.

Plaintiffs contracted to build defendant's house, for actual cost of labor and materials and 10 per cent. profit, guarantying that the total cost should not exceed a certain amount. After several payments on account, the parties disagreed, and plaintiffs quit work. Negotiations between the parties resulted in a settlement of differences, and plaintiffs signed a paper agreeing that there was a certain balance due, "leaving the utmost that we can call upon you to pay us four thousand and forty-six dollars," and concluding, "All extras have been adjusted between us, and no more will be charged to you unless you order them in writing." *Held*, that the latter transaction was a settlement and adjustment of all matters up to date, and was the basis on which the rights of the parties were to be determined, and therefore evidence that bills rendered before that time included items not included in the contract and not adjusted in the agreement was inadmissible.

2. SAME—UNLIQUIDATED DEMAND.

A demand for a balance due on a building contract which was for no fixed price, but merely limited the cost of the building to a certain sum, is an unliquidated demand, within the rule that, when a claim is unliquidated and there is a bona fide dispute as to the amount of liability, an adjustment and settlement of the accounts by the parties is binding.

Appeal from judgment on report of referee.

Action by Holland Emslie and another against Edward Livingston. Judgment for plaintiffs, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

L. Laflin Kellogg (Alfred C. Petté, on the brief), for appellant.
John Miller, for respondents.

GOODRICH, P. J. The defendant was the owner of certain premises at Highlands, in the county of Putnam. There was on the premises a house partly built by a contractor, who had failed to complete his contract. On February 29, 1896, the defendant

made a written contract with the plaintiffs, whereby they agreed to complete the house according to annexed plans and specifications, the work to be completed on May 25th, "the work to be done on the basis of actual net cost for material and labor and 10 per cent. profit." The plaintiffs guarantied that the total cost should not exceed $12,596, including the 10 per centum profit. They also agreed to do what work was necessary to complete the stable in accordance with the specifications and plans, "for actual cost, and ten per cent., as in the case provided for the house." The first payment was to be made for work done to April 1st, as soon as account and vouchers were examined and approved, less 10 per centum to be retained till final settlement. A second payment was to be made on May 1st, on the same basis, and the third and final payment on completion and acceptance of the whole work. The plaintiffs began their work, and on March 31st rendered an account amounting to $3,398.25, which the defendant paid. A second account was rendered on May 1st, amounting to $4,480.05, from which was deducted $809.79 for a bill of J. L. Molt & Co., included in the account, which had been paid by the defendant, and the balance of $3,670.26 was paid. On June 1st the plaintiffs rendered two other accounts, for $3,263.27 and $180.92, and these were included in a subsequent account rendered on June 9th, amounting in all to $5,222.63. The defendant declined to pay the account of $3,263.27, and the plaintiffs stopped their work, and removed their materials from the premises. Negotiations between the parties followed, which, as the defendant contends, resulted in a settlement of differences, and on or about June 10th several papers were executed in evidence of the adjustment. One of them, signed by the plaintiffs, stated that, by the original contract, they had agreed to finish the house at a sum not exceeding $12,596, and had received on account $8,459.77, leaving a balance due of $4,046.23; "leaving the utmost that we can call upon you to pay us four thousand and forty-six 23/100 dollars, less the value of" certain materials which were on the premises, the value of which was to be credited to the defendant. There was also some difference on account of mantels, which apparently was afterwards adjusted between the parties at $37.90 due the plaintiffs. The paper concludes with the statement: "All extras have been adjusted between us, and no more will be charged to you unless you order them in writing." The second paper stated that, when the plaintiffs returned the removed materials, the defendant should pay them $1,000 "towards the contract amount due on the work and material done on, and furnished for, said house." This payment was made on June 15th. The third paper was a bond of the plaintiffs to carry out the first described of the three papers. A fourth paper was signed by the plaintiffs, in which they acknowledged receipt of $473.56, which was stated to be "for the work done and material furnished at house and stable"; the items being given of work to both house and stable. This document contained a clause stating that, in consideration of one dollar, "we hereby waive and relinquish any other claim we may have for extra work." A fifth paper was signed by Mr. Anthony, the attorney of the de-

fendant, which stated that he had received from the defendant three checks, for $473.56, $226.16, and $2,300, amounting in all to $2,999.72, which he was to deliver to the plaintiffs upon the return of the materials removed by them, and these checks were delivered to the plaintiffs on June 13th. This check for $226.16 seems to have been intended as payment for another bill, which was rendered by the plaintiffs on June 1st for work done on the stable. There is also a receipt of the plaintiffs for $1,000, dated June 15th. Thus, it appears that, of the amount of $4,046.23 stated in the plaintiffs' memorandum of June 10th, there was paid $3,300, leaving due the $746.23, which was the "utmost" that could be claimed by the plaintiffs. This was subject to some further deductions, not necessary to be considered here. During June and July several written orders were given by the defendant for work on the house and stable, to cost, respectively, $7, $1, $42.70, $4, and $4.50, amounting in all to $59.20. All of them were written on one sheet, which contains a statement, signed by one of the plaintiffs: "I shall hold my men responsible for any work done outside of that included in the contract, unless order is given on this sheet and signed by architect." The plaintiffs subsequently did other work on the premises, and claimed that they had fulfilled their contract, which the defendant denied, and this action was commenced. The complaint set up the execution of the contract of February 29th, of which a copy was annexed; alleged performance, and the failure of the defendant to pay the moneys due thereon; that the defendant was indebted to the plaintiffs for the work, labor, and services, care and diligence, of these plaintiffs and their servants, and for material in completing the house and stable of the defendant, and for extra work and materials for the doing of other work, and performing other services, and supplying other materials, amounting to $17,304.73. It also alleged a further indebtedness of $1,730.42, being the 10 per centum named in the contract. The plaintiffs did not allege any payments on account, but demanded judgment for $7,057.36 and interest. The answer denied that the plaintiffs had completed their contract, and set up the transaction of June 10th as a settlement and adjustment of accounts; that, of the $4,046.23 named in the papers then executed, payments of $3,448.87 had been made; and, as a counterclaim, the loss of the use of the premises by reason of the failure of the plaintiffs to complete, amounting to $1,179.87, and that by the agreements of June 10th the total amount of extra work done, or to be done, was fixed at $473.56, which was paid. The issues were referred. The referee has written no opinion, and we are in doubt as to the reasons for his decision. He finds, however, the making of the contract of February 29th; that the plaintiffs have substantially fulfilled the same, except as modified by subsequent agreements between the parties; that the defendant is indebted for work on the house named in the plans and specifications, $12,596, and "for work on stable, and extra work not in contract," $4,432.30, with 10 per centum on the same, $443.23, amounting to $4,875.53,—these sums amounting to $17,471.53, upon which has been paid $12,890.25, leaving due $4,581.28; for which sum,

with interest, he directed judgment for the plaintiffs.  He makes no reference to the transactions of June 10th.

It is very evident, from the report of the referee, that he has entirely ignored the effect of the transactions of June 10th, which seem to us to form a settlement and adjustment of all matters between the parties up to that date, and to be the basis upon which the rights of the parties are to be determined.  There had been a disagreement between them as to whether the original contract had been performed.  Negotiations ensued between the parties, and they adjusted their accounts up to that date on a new basis.  For all transactions prior to that date the accounts between them were adjusted and agreed upon.  But the referee permitted evidence to be introduced by the plaintiffs, showing that in the bills which were rendered on March 31st, May 1st, and June 1st and 9th, there were about a hundred items which were partly for extra work done by the plaintiffs, and which were not included in their contract, and not adjusted by the agreements of June 10th.  Of these items, in reference to which evidence was admitted, one may be given as an example.  In the account of March 31st was an item, "Labor at building from Mar. 2 to April 1, 1896, $339.50."  The evidence of the plaintiffs was received, over the objection and exception of the defendant, to show that this item included "extra work, $84," "not called for by the specifications."  The admission of such evidence constitutes reversible error.  Part of this work thus held to be extra work was evidently work done upon the house, irrespective of other work done upon the stable.  But the parties on June 10th agreed that the "utmost" amount due from the defendant for all such work done upon the house was $4,046.23.  This included all bills which had been rendered up to that date.  The evidence which the referee thus admitted violated plain principles of law.

It is well settled that where a demand is unliquidated, and where there is a bona fide disagreement in regard to a debtor's liability, the law favors an adjustment of such controversies without judicial intervention.  Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034.  In Nassoiy v. Tomlinson, 148 N. Y. 326, 330, 42 N. E. 715, 716, the court said:

"If the claim is unliquidated, the acceptance of a part, and an agreement to cancel the entire debt, furnishes a new consideration, which is found in the compromise.  A demand is not liquidated even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as 'unliquidated,' within the meaning of that term as applied to the subject of accord and satisfaction."

The record shows that the case at bar falls within the category of an unliquidated demand.  There was no fixed price in the contract for the performance of the work, but there was a limit beyond which the defendant could not be held liable.  There was a bona fide dispute between the parties as to the meaning of the contract and the amount due thereunder, and the parties met and adjusted the amount due.  The plaintiffs executed agreements which stated such amount, and they agreed that they could not and would not demand any greater sum.  The plaintiffs cannot be per-

mitted, in the absence of fraud or misrepresentation, to invalidate this agreement of compromise, which seems to have been executed after careful consideration.

The judgment must be reversed, and a new trial granted, with costs to abide the event. All concur.