## EMSLIE et al. v. LIVINGSTON.

(Supreme Court, Appellate Division, Second Department. May 1, 1900.)

1. COMPROMISE AND SETTLEMENT—EFFECT.

Plaintiffs contracted to build defendant's house, at a guarantied price, within a specified time. The work not having been completed within the required time, a controversy arose over a payment, and plaintiffs quit work. Negotiations resulted in a written settlement, reciting that plaintiffs had received a certain sum on the contract, leaving a certain balance above the guarantied price, and that all extras had been adjusted, and that no more should be charged for extras, unless ordered in writing. *Held* a waiver on defendant's part of the time limit, and an abandonment of all claims for damages for failure to complete the work within the time specified.

2. CONTRACTS—WAIVER OF CONDITION—EVIDENCE.

In an action to recover for work and materials under a building contract, where the parties had made a written agreement stipulating that only extra work ordered in writing should be charged for, it was error to exclude evidence, offered by plaintiffs, that extra work was done on oral orders after the date of such agreement, since the parties were competent to waive the condition.

Appeal from judgment on report of referee.

Action by Holland Emslie and another against Edward Livingston. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

John Miller, for appellants.
L. Laflin Kellogg (Alfred C. Pette, on the brief), for respondent.

HIRSCHBERG, J. The judgment must be reversed. The action is to recover for labor and materials, under a contract to complete a dwelling house and stable; the defendant denying the indebtedness, and asserting, among other defenses, a counterclaim because of a failure on the part of the plaintiffs to complete the work within the period required by the contract, and expenditures incurred by the defendant in completing the work himself. The original contract is in writing, dated February 29, 1896, and requires the plaintiffs to complete the house "in as short a time as practicable, consistent with doing good work,—say, to be all complete and ready to occupy by or before the 25th of May, 1896." Payment was to be on the basis

of the actual net cost for material and labor, with 10 per cent. profit; the plaintiffs guarantying that the total cost, including the 10 per cent., should not exceed $12,596. No controversy arises as to the stable. The defendant moved into the house on July 25, 1896, although the work was not then finished, and did afterwards expend some money in completing it. In settling and adjusting the accounts between the parties, the learned referee found a balance due the plaintiffs of $539.09, but found in favor of the defendant on the counterclaim for damages by reason of the delay in the sum of $1,000; the judgment appealed from being accordingly in favor of the defendant for the difference, viz. $460.91. The contract provided for three payments; the final one to be on completion and acceptance. Having received two payments, the plaintiffs demanded a third on or about June 1st, to which demand the defendant refused to accede; and the plaintiffs quit work, and withdrew their materials from the premises. Negotiations ensued, which resulted in an amicable adjustment of the controversy, the terms of which settlement were reduced to writing, and several documents embracing them were signed by the parties between and including June 10th and 16th. Among them is an agreement executed on behalf of the plaintiffs, and dated June 16, 1896, in which is a recital to the effect that the plaintiffs have received $6,549.57 under the contract above referred to; leaving the balance over and above the guarantied price as the sum of $4,046.23. In this document the plaintiffs agree with the defendant that this sum of $4,046.23 is, to quote its language, "the utmost that we can call upon you to pay us." In this agreement of June 16, 1896, it was further agreed that the plaintiffs should allow or pay to the defendant, in cash, the value of copper, planks, lumber, nails, cracked stone, and any other material they may have found on the place, and used or may thereafter use; that an account for mantels as provided in the original contract was yet to be adjusted; and that all extras have been adjusted between the parties, and no more would be charged to the defendant unless he ordered them in writing.

The referee found as a fact that the defendant did not waive the provision of the original contract requiring the completion of the work by the 25th day of May, 1896. We find no evidence in the case to support this finding. On the contrary, it seems clear to us that the agreement made in June must be regarded as a waiver on the part of the defendant of the time limit, and an abandonment of all claim for damages, if any existed, because of the plaintiffs' default in that regard. The settlement must be regarded as final and conclusive with respect to prior claims and transactions. In reversing the judgment rendered by another referee on a former trial of this case, and referring to the agreement in question, the presiding justice of this court said (Emslie v. Livingston, 34 App. Div. 133, 136, 54 N. Y. Supp. 492):

"It is very evident, from the report of the referee, that he has entirely ignored the effect of the transactions of June 10th, which seem to us to form a settlement and adjustment of all matters between the parties up to that date, and to be the basis upon which the rights of the parties are to be determined. There had been a disagreement between them as to whether the original contract had been performed. Negotiations ensued between the parties,

and they adjusted their accounts up to that date on a new basis. For all transactions prior to that date the accounts between them were adjusted and agreed upon."

The record now before us fully justifies and confirms the conclusion reached on the former appeal. It establishes the fact that the parties did not regard the plaintiffs, after the execution of the June agreement, as liable for damages by reason of their failure to complete the work by May 25th. No other inference is consistent with the facts. Contemporaneously with the execution of the new agreement, a bond with a surety was given by the plaintiffs, conditioned that the plaintiffs should complete the house in accordance with the agreement of February 29, 1896, and should pay to the defendant the amount of all loss and damage by reason of any default or failure. The bond, by its general terms, covers the liability of the plaintiffs by reason of their failure to complete the work in time, if such liability then existed; but it will hardly be seriously contended that the surety was expected to indemnify the plaintiffs against the happening of an existing default. The provision in the agreement that the plaintiffs were to do extra work, to be thereafter ordered in writing, is also inconsistent with the theory that they were to pay damages for the period between May 25th and the time when the house, with such extra work, should ultimately be completed. Moreover, the defendant in all the subsequent interviews and correspondence with the plaintiffs never claimed or suggested the existence of the demand now under consideration. In a letter written to the plaintiffs as late as October 21, 1896, the defendant states:

"If in fact the work has cost you more than you agreed to do it for, it is no interest to me to know exactly how much you have lost on it, except as a matter of curiosity. When you have completed the work according to contract, and allowed me for all the material used, I am inclined to think there will be very little, if anything, due you; and if I have to complete the work, by employing other parties, it will probably cost you more."

In this letter there is no assertion of any claim for damage because of delay, and the expression indicating the possibility that a small amount might be due the plaintiffs when the work should finally be finished is surely irreconcilable with the belief on the defendant's part that he then had an unliquidated claim for damages, by reason of such delay, far in excess of the amount unpaid on the stipulated price, and the extra work which had been ordered in writing.

We think, also, that the learned referee erred in rejecting the evidence offered by plaintiffs as to the extra work done on oral orders after June 16th. While it would require clear and convincing proof to establish a waiver of the condition in the agreement of June 16th that only extra work ordered in writing should be charged for, yet the parties were competent to abandon this provision. The nature and extent of the extra work performed in obedience to verbal orders from the defendant given after that date, and the circumstances attending the orders and their execution, are competent evidence, and, if sufficient to establish that the parties contemplated and expected that such work should be done and should be paid for, will require its allowance, notwithstanding the deviation from the strict terms of

the condition referred to. A new trial should be had before a new referee, to be appointed at the special term.

Judgment reversed, and new trial granted before another referee, to be appointed at special term; costs to abide the event. All concur.