Chicago and Eastern Illinois Railroad Company

*v.*

Michael J. Moran.

*Opinion filed October 19, 1900.*

1. Mechanics' liens—*when sub-contract will be regarded as completed.* A sub-contract for the construction of railroad masonry is not completed, as respects the running of the time for serving notice of lien, until the work is done, even though the railroad company, by arrangement, finishes the latter part of the work, where the sub-contractor, under such agreement, is still required to furnish and prepare the stone for laying and is held responsible for the quantity and cutting of the same, the only work assumed by the company being the laying thereof.

2. Estoppel—*when a railroad company is estopped to repudiate oral agreement.* A railroad company which has received the benefit of an oral agreement, made between its engineer, as its representative, and a sub-contractor on masonry work, which fixes the additional price to be allowed the latter for cutting stone which the engineer directed should be substituted for that called for in the contract, is estopped to repudiate such agreement after the sub-contractor has fully acted thereon.

3. Waiver—*provision in contract requiring written consent to change may be waived.* A provision in a written contract for railroad masonry that no stone other than that specified in the contract should be used without the written consent of the company's engineer, must be deemed waived where the engineer not only consented orally but directed the substitution of other stone, which was accepted and used by the company.

4. Contracts—*when provision for settling disputes does not apply.* A provision in a written contract for railroad masonry that the decision of the company's engineer shall be conclusive of all disputes relative to the contract does not apply as to extra work and materials different from those specified in the written contract.

*C. & E. I. R. R. Co.* v. *Moran,* 85 Ill. App. 543, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. Dunne, Judge, presiding.

W. H. Lyford, and S. A. Lynde, for appellant.

Frank O. Lowden, Henry D. Estabrook, and Herbert J. Davis, for appellee.

Per Curiam: In affirming the decree in this case the following statement was made and opinion rendered by the Branch Appellate Court:

"This is a petition for a mechanic's lien under the Railroad Lien statute, against appellant and one Chapman, as original contractor.

"In April, 1892, appellant entered into a contract with Chapman for the construction of about forty-six miles of track between Danville and Momence, Illinois. Four days thereafter Chapman entered into a contract with Moran, the appellee, sub-letting to the latter a portion of the work. The sub-contract was identical with the main contract in reference to the masonry, and after providing that the rate should be for 'first-class bridge masonry, $8.50 per cubic yard,' contains the following: 'It is understood by the parties hereto that the foregoing prices of masonry are based upon the following agreement of the parties as to cost of and freight rates on stone to be used therein, to-wit: That the necessary stone for said masonry can be secured from quarries at Williamsport and Independence, Indiana, at three dollars ($3) per cubic yard, and that the freight rate on such stone from the quarries to the work will' be fifty cents per ton. If the party of the first part is obliged to secure stone from quarries other than those mentioned above, and from such other quarries the rough stone costs more than three dollars ($3) per cubic yard, the party of the second part will pay the difference between three dollars ($3) per cubic yard and the cost of such stone, but no stone shall be secured from such other quarries without the written consent of the engineer of the second party. If the freight rate on stone secured from other quarries than those mentioned above is more than fifty cents per ton, the second party will pay, in addition to the prices above named,

the excess of such freight rate above fifty cents per ton. If, on the other hand, other quarries are found from which the first party can secure satisfactory stone on which the freight rate from the quarries to the work is less than fifty cents per ton, the second party shall deduct such difference in freight rates on stone from the prices above named.'

"It appears from the evidence that sandstone was the only kind of stone obtainable at these Indiana quarries, but, as appellant's counsel states, it was found that stone from these quarries was unsatisfactory and other stone had to be used. Thereupon Moran, Chapman and one Baldwin, the chief engineer of the appellant company, got together in Baldwin's office to discuss this stone question. Moran was finally directed by Chapman and Baldwin to procure stone from a Joliet quarry, and it was agreed that Moran should receive one dollar extra per yard for cutting the Joliet limestone over what he was to have received for the Indiana sandstone, and sixty-five cents a yard to cover the difference in the price of the Joliet over the Indiana stone.

"In the latter part of November, 1892, there still remained a comparatively small amount of work to complete appellee's contract. This was the erection of the parapet walls of two bridges which had been delayed, because when appellee was ready the railroad company was not ready, and afterward, for some reason, it was not convenient for appellee to proceed at the time when the company was ready to permit the work to go on. Because of this mutual inconvenience an arrangement was made between Moran and the appellant company, with the consent of Chapman, whereby appellant agreed to complete the wall itself, using the stone which had been cut and provided for the purpose by appellee. For thus setting the stone in and erecting the parapet walls, appellee was to be charged by appellant $3 a cubic yard. Appellee testifies that he wanted the company to take

the completion of this wall altogether off his hands and enable him to get rid of the work, and that this, Baldwin, the chief engineer of appellant, refused to do. He says that as the arrangement was made he was still to be accountable for the stone in that parapet wall, and responsible for any that was missing or a misfit, until the completion of the work. The railroad company was to do only the mechanical work, and Moran was still to furnish the material, just as he would have done if he had with his own men laid the stone in the wall. He had already prepared the stone, and it was there upon the ground. He did no work himself and furnished no new material after December 1, 1892.

"The railroad company completed the erection of the wall under its contract with appellee about the middle of December, and on the 17th settled in full with Chapman. The latter stated his indebtedness under his contract with appellee to be $7582.06. Without verifying this statement by inquiry of Moran, appellant settled with Chapman on that basis, retaining the amount which Chapman thus conceded to be due appellee, to be delivered to the latter upon the condition imposed by Chapman that Moran should sign a receipt in full and a release discharging both Chapman and appellant from all further liability to Moran growing out of the said contract. Moran refused to sign such a release, and on December 27 served a notice of lien upon the president of the railroad company. Upon the hearing of the petition the circuit court decreed that appellee was entitled to the lien and to the extra price as agreed upon for cutting the Joliet stone. The contractor, Chapman, abandoned the case, apparently, pending the hearing in the trial court, and the railroad company brings the case here on appeal."

Opinion:

"It is first contended by appellant that the notice and copy of contract required to be served in accordance with the Railroad Lien act (Rev. Stat. chap. 82, sec. 9,) were

not served upon appellant within twenty days after the completion by appellee of the work under his sub-contract with Chapman. It is contended that the arrangement made, with Chapman's consent, between appellee and appellant, about November 23, 1892, in accordance with which appellant completed the parapet walls for Moran, operated as a termination and completion, at that date, of the sub-contract between appellee and Chapman. The railroad company finished the work about the middle of December. The notice required to maintain appellee's lien was served upon appellant December 27, and within the time required by statute, if it be considered that appellee's sub-contract with Chapman was not completed until the appellant company finished, under its agreement with appellee, the construction of the parapet walls which were included within said sub-contract. If, on the other hand, the arrangement between appellant and appellee, made about November 23 previous, operated as a completion of appellee's sub-contract, because appellant agreed to finish the work itself with the material already furnished by appellee, then the notice served December 27 following was not served within twenty days of the completion of the sub-contract.

"There is no controversy 'as to the dates, facts and circumstances of this transaction,' as appellant's counsel concede. It is manifest that while Moran did not do any actual work under the sub-contract with Chapman after the arrangement of November 23, or thereabouts, was made with the appellant company, still the work itself, as required by said sub-contract, was not done until finished by appellant, about December 14. Appellee's contract with Chapman was not *completed* until that date. It is evident, also, that his responsibility for a portion of the work, at least, did not cease until that date. According to evidence introduced in behalf of appellant, appellee was allowed for the material and the cutting of the stone composing the wall. All that the appellant

company undertook was to lay the stone furnished by
Moran in place,—that is, erect the wall; and in mak-
ing the arrangement as to price, Moran allowed and the
appellant company was to receive,—deducting it from
what, under the sub-contract, Moran was otherwise en-
titled to,—$3 a cubic yard *for setting the stone.* No ar-
rangement was made that appellant should supply or
cut or re-cut any stone in case of any deficiency or defect
or misfit. It does not appear even that any investigation
was made by appellant of the quantity or quality or con-
dition of the stone. The company merely agreed to set
it in place, and all the other work and material agreed
to be furnished by Moran under his sub-contract with
Chapman he was still liable for until the whole was com-
pleted. He was not released from his contract by the
arrangement with appellant, and his liability thereunder
did not end until the stone he agreed to and did furnish
was actually in place and the parapet walls completed.
This was not until about December 14, and his notice of
lien was served December 27, within twenty days of the
completion of the sub-contract.

"There are other considerations which lead to the same
conclusion. The railroad company clearly, under the
arrangement with Moran, would not have been obliged
to settle with Chapman, the original contractor, and pay
him for the work Moran was to do, until it was actually
done, and it was thus ascertained that the stone Moran
was furnishing was sufficient in quantity, and in all other
respects to comply with the contract. Appellant did not,
in fact, settle with Chapman until December 19,—four
days after the completion of the parapet walls,—as re-
quired by the contracts. When it did thus settle, Chap-
man admitted indebtedness to Moran, and the appellant
accepted his statement of the amount of that indebted-
ness without verifying its correctness, when, according
to its own answer, it might have been put upon its guard
by the condition which Chapman exacted to be complied

187—21

with before Moran should be paid what Chapman admitted was due him, viz., that he should sign a receipt in full and a release of both Chapman and appellant from further liability. .

"It is urged that the circuit court erred in overruling certain exceptions to the master's report. These refer to an extra allowance to Moran for cutting 3548.8 yards of Joliet stone at one dollar per yard, and to the allowance of interest. The real contention is as to the allowance of anything extra for cutting the Joliet stone. It is conceded that a verbal agreement was made between Moran, Chapman and one Baldwin, representing appellant as its chief engineer, that Moran should receive this one dollar per cubic yard for the 3548.8 cubic yards of stone for which the allowance complained of was made. Appellant's contention is that this verbal agreement is in contravention of the written contract between Moran and Chapman, and therefore void. It is not denied that Moran proceeded under the agreement in good faith to furnish, and did furnish and cut, this quantity of Joliet limestone. We perceive no reason why the railroad company could not agree, if it desired that Joliet limestone should be used instead of the Indiana sandstone called for by the contract, to pay Chapman, for Moran, the excess or supposed excess in cost of the former stone over the latter, nor why appellant could not make an explicit and binding agreement to pay the extra dollar per cubic yard in consideration of getting the Joliet stone.

"It is urged, however, that the contract in writing between Chapman and appellee contemplated this very contingency that it might become necessary to use other stone than that described therein, and provided just what extra compensation should be paid in such case, whether for Joliet or any other stone, and that no more can be recovered, notwithstanding the new verbal agreement. The sub-contract contains a provision that if Moran 'is obliged to secure stone from quarries other than those

mentioned above, and from such other quarries the rough stone costs more than $3 per cubic yard, the party of the second part (Chapman) will pay the difference between $3 per cubic yard and the cost of such stone. But no stone shall be secured from such other quarries without the written consent of the engineer of the second part.' The contract expressly distinguishes between the 'cost of and freight rates on stone.' While the charge for freight in case stone was procured from other quarries was specified in the contract, the difference in cost of such stone was not thereby expressly fixed. It was left to be ascertained when the contingency should arise.

"It would appear that the use of Joliet limestone, involving extra expense in cutting over Indiana sandstone, was a contingency not contemplated when the contracts were drawn. This is indicated by the conduct of the parties. When the question arose, appellant's chief engineer did not claim that appellee could be compelled to use Joliet stone under the contract. Such an idea seems not to have been suggested. We think it clear the parties themselves so construed the contract, and regarded the extra expense of cutting the Joliet limestone, over the Indiana stone, as not covered by the contract and to be provided for by a new agreement,—else why was such new agreement made? It was made, and appellee in good faith furnished and cut the more expensive stone thereunder. Appellant received the benefit. The agreement having been executed, an equitable estoppel certainly arises in Moran's favor, and appellant cannot now be allowed to repudiate its own act by which appellee was led into a line of conduct prejudicial to himself. *Worrell* v. *Forsyth*, 141 Ill. 22, and cases there cited.

"Nor do we regard this conclusion as in any way affected by the provision of the contract relied upon by appellant, as follows: 'The following are the full rates upon which this agreement is based, viz.: First-class bridge masonry, $8.50 per cubic yard.' This provision

of paragraph 7 of the contract is immediately followed by the portion of the contract wherein Chapman agreed to pay the difference in cost in case Moran was obliged to procure rough stone from 'other quarries,' costing more than the Indiana stone. This difference was to be over and above the 'full rates,' as stated in said paragraph 7, and it appears to have been so treated by the parties. The witness Dawley stated that sixty-five cents extra per cubic yard was allowed Chapman therefor by appellant. This difference was due Moran from Chapman under the sub-contract, and its correctness is not disputed. But it is over and above the original 'full rates' of $8.50 per yard provided by the contract for first-class bridge masonry, and shows the construction of that clause by the parties themselves, viz., that under certain conditions that price for the masonry was not to be the full rate.

"We do not regard the authorities cited by appellant's counsel to show that 'a written, sealed, executory contract cannot be modified by a parol agreement,' as in point under the facts.

"The objection is made that there was no consent *in writing* by Baldwin, appellant's engineer, for use of the Joliet stone. It is conceded he did consent, and he not only consented for the railroad company, but desired and directed it to be substituted for the Indiana stone. It was so substituted, and was accepted and used by the appellant. The objection is purely technical. The *written* consent must be deemed to have been waived by appellant's conduct. *City of Elgin* v. *Joslyn,* 36 Ill. App. 301.

"It is again objected to the allowance for this Joliet stone that it is in the contract provided that the decision of appellant's engineer on any dispute relative to the agreement shall be final and conclusive on the rights and claims of the parties. But there was no dispute. By the construction of the contract made, as we have seen, by the parties themselves, the extra cost of cutting the Joliet stone was treated as outside of and not controlled by the

written contract. It is only disputes relative to the written contract that the engineer's decision is to control. Where extra work and materials are of a different character from those specified in the contract, the provisions of the latter will not apply. *City of Elgin* v. *Joslyn*, 136 Ill. 525, affirming 36 Ill. App. above referred to.

"If, however, it be conceded, for the sake of the argument, that it was within the province of appellant's chief engineer to determine whether the extra allowance for cutting Joliet stone was covered by the written contract, he did so determine that it was not when he made a new agreement with Chapman and appellee that the latter should receive the extra dollar per cubic yard. Moreover, he allowed the extra dollar on about nine hundred cubic yards. Under the clause in question his decision was made 'final and conclusive' on the rights and claims of the parties. It would be equally conclusive upon both parties. He had no authority to make one decision to-day and change it to-morrow, after both parties had accepted and acted upon it in good faith. Moran had in the meantime procured and was using Joliet stone, and that clause could give Baldwin no power arbitrarily to set aside a 'final and conclusive' award in order to make another and different award upon the same point.

"It is contended that the trial court erred in directing by its final decree that appellee be entitled to an order of payment of $5000 held by appellant for Moran's use, with interest, or so much of said sum, with interest, as shall remain when any judgments or orders in certain garnishment proceedings then pending against appellant should be satisfied or the liability thereunder terminated. It appears that two attachment suits had been commenced against appellee, and appellant had been garnisheed. The $5000 referred to is a balance of the money appellant had received from Chapman for payment to Moran. By an agreement between appellant and appellee, made while this suit was pending, appellant was

to 'hold said $5000 for the sole use and benefit of said Moran, after the payment of any sum or sums it may be found liable for as garnishee in said attachment proceedings.' The petition prays for such general relief as the case may require. We see no reason why the court, having jurisdiction of the subject matter and the parties, could not, under the pleadings and the evidence before it, settle the rights of the parties as to all matters relating to the litigation. Appellee ought not to be compelled to bring another suit to recover this $5000 which the evidence shows is his money, due him on the sub-contract, and which appellant concedes it holds for his sole use and benefit, subject to the determination of the attachment and garnishment proceedings.

"As to that portion of the decree requiring payment of interest on said sum by appellant, we think it erroneous to provide for such payment now, it appearing that the money is rightfully withheld by appellant for its own protection. If, upon application for an order upon appellant under the decree, upon proper evidence of the discharge of appellant as garnishee, any reasons should appear for allowing interest, another question may arise. Appellant could not be allowed to retain for its own benefit appellee's money without compensating him for its use or detention, but it does not at present appear that it has done so. Until it does so appear it is premature, at least, to provide in the decree for the allowance of interest upon the money in question. We do not regard it as necessary to remand the cause because of the error in that respect, which only affects a possible future order in the case. If it becomes necessary for appellee to apply to the chancellor for an order requiring payment of this $5000, it will be time enough then for the court to determine whether or not appellant has become liable for interest.

."For the reasons indicated the decree of the circuit court will be affirmed."

We fully concur in the views set forth in the opinion of the Branch Appellate Court rendered by Mr. Justice FREEMAN in this case and adopt the same as the opinion of this court.

The judgment of the Branch Appellate Court is affirmed.

*Judgment affirmed.*