SAMUEL H. HEADLEY, PLAINTIFF IN ERROR, v. WALTER
K. CAVILEER, DEFENDANT IN ERROR.

Argued November 24, 1911—Decided March 4, 1912.

1. Where a building contract provides in substance that no addi-
tions or alterations made during the progress of the work shall
be regarded as extra work unless agreed to in writing and
signed by the parties before such work is begun, the mere per-
formance of extra work without such written agreement will
not give rise to an implied waiver of the provisions of the con-
tract in that respect.

2. But where it is made to appear subsequent to the execution of
the original contract and during the progress of the work the
owner and contractor made further oral agreements that cer-
tain changes or alterations should be considered as extra work
and specifically agreed upon the price to be paid for the same,
or expressly agreed that a reasonable price should be charged
therefor in addition to the contract price, a jury is entitled to
infer that the stipulation forbidding a recovery for such extras
without written agreement has been waived by the parties.

3. *Landstra v. Bunn,* 52 *Vroom* 680, distinguished.

On error to the Supreme Court.

For the plaintiff in error, *Bourgeois & Coulomb.*

For the defendant in error, *Thompson & Smathers* and
*Henry W. Lewis.*

The opinion of the court was delivered by

PARKER, J. The controversy in this case relates to a claim
for extra work on a building in Atlantic City erected by
plaintiff, Headley, for the defendant under a written contract
and specifications. These specifications, which are referred
to in the contract as annexed thereto as part thereof, contain
the following clause:

"*Alterations.*—At any time directed by the owner, the con-
tractor shall make any alterations, additions or omissions
from the plans and specifications without affecting the valid-

ity of the contract, but the price of all work shall be added to or deducted from the contract price as the case may be, and the amount agreed upon and affixed in writing and signed by the owner and contractor before such work is begun. Such order for work must be produced and surrendered at the final settlement or no payment for such work will be made. Should any dispute arise relative to such charges, they shall be settled by arbitration, the committee, whose decision shall be final, to be appointed, one by each party to the contract and a third to be chosen by the two first selected."

There was evidence at the trial from which the jury were justified in a finding that by several express agreements between plaintiff and defendant, certain changes were made in the details as prescribed in the plans and specifications, and that extra compensation to plaintiff was orally agreed upon therefor; as for example, detail window frames instead of stock frames, extra fifty cents each; shingled porch columns instead of stock turned columns, $3 each; oak finish in two rooms instead of cypress, agreed on (as testified by plaintiff) at $59 per house; change in kitchen ranges, $16 each; in door and window heads, $15.60; and in heating apparatus, $86. There was other work done, such as planing floors, varnishing, and patching of roof, but as to this there was no agreement on a price, nor, so far as appears, any specific agreement unless the fact that the planing "was to be done and charged for" be regarded in that light.

At the trial the court was requested to charge the jury that "in no event can the plaintiff recover more than $8,000, the contract price, less $3,291.67, the amount paid;" also, that "there can be no recovery for any alterations or additions, because there was no written order as provided by the specifications." These requests were refused and plaintiff had a verdict and judgment embracing his claim for extras. The judgment being taken to the Supreme Court on writ of error, that court held, without passing specifically on the second request, that the first should have been charged, quoting the clause as to alterations set forth above, and adding:

"This provision of the contract was binding upon the parties unless it was subsequently annulled by their agreement. There is nothing in the testimony before us to show such annulment, and the defendants cannot be deprived of its protection without their consent. There was no writing signed by the owner and contractor fixing the amount to be paid for the extra work. By the terms of the contract the plaintiff was not entitled to be paid for such work in the absence of such writing. The defendants, therefore, were entitled to have their request charged and its refusal was harmful error."

The Supreme Court accordingly gave judgment of reversal and that judgment is now before us at the instance of the original plaintiff. The substantial questions for determination are whether such a provision in a written contract as that now before us may be modified or waived by the acts or subsequent agreement of the parties or both, and if so, what is sufficient evidence of such a waiver?

Disputes between contractors and owner as to extra work and changes on building or working contracts are as old as the practice of contracting for such work and are a fertile cause of litigation. For very many years the effort has been to limit or prevent them by putting the main contract in writing and stipulating in effect that changes and alterations must be agreed on in writing in order to support a claim for extra compensation. When there is an architect or engineer, he is usually brought into such a stipulation as arbiter or agent of one or both parties. In the case at bar there was no architect, but we conceive that this makes no difference in the principle to be applied. The court early recognizing the beneficial character of such stipulation as tending to prevent trumped up claims for extras and acrimonious disputes between owner and contractor resulting in litigation and loose testimony often running into perjury, endeavored as far as they could to give effect to such provisions, and occasionally succeeded. *Miller* v. *McCaffrey* (1848), 9 *Pa. St.* 245. The fundamental difficulty, however, with which owners and courts had to contend and which in the absence of legislation is insuperable, was and is that there is no statute requiring

such contracts as the present one to be in writing, that parties who have contracted together have a right to cancel their contract, or alter it in any way not prohibited by law, or to supplement it by another and additional contract, and in cases of this kind, may do so orally in the absence of any statute requiring such contracts to be in writing. Consequently no legal force could or can be given to stipulations of the character now under consideration as constituting a prohibition against the parties altering the main contract by mutual agreement. No matter how stringently such clauses may be worded, it is always open for the parties to agree orally or otherwise, upon proper consideration, that they shall be partially or entirely disregarded and another arrangement substituted. Were any different rule adopted, the right of contract would be to that extent impaired. So that until the legislature sees fit to enact some statute of frauds covering this point, building contracts solemnly entered into in writing and under seal must be subject to radical change by the mere conversation of the parties if such conversation answers the tests of a contract at common law. This proposition was intimated in the opinion of former Justice Collins, speaking for this court, in the case of *Cooper* v. *Hawley,* 31 *Vroom* 560, 563, where he said: "Speaking for myself, I can see no reason why a valid contract of whatever nature should be denied efficacy because the parties had previously made a different contract, however solemn in form." That case, however, went off on another point, viz., that in the contract then in question the extra work clause was held to refer only to extra work ordered by the architect and not extra work ordered by the owner—a decision very similar to that in *Wood* v. *Fort Wayne,* 119 *U. S.* 312, and *Wilkins* v. *Wilkerson,* 41 *S. W. Rep.* 478. But the right of the parties to supplement their original agreement, no matter how solemn in form, by a later agreement, however informal, is fully recognized by such cases as *Bartlett* v. *Stanchfield,* 148 *Mass.* 394; 2 *L. R. A.* 625, where the Supreme Court of Massachusetts, speaking through Mr. Justice Holmes, said: "Attempts of parties to

tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and defendant no doubt. But it cannot be assumed as matter of law that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation as well as by express words."

It was said in *Copeland* v. *Hewett*, 96 *Me.* 525:

"Parties have a right to contract in any way they see fit, orally, by simple contract or by specialty. When the statute of frauds is not involved the one form is as binding as the other, and however evidenced the contract remains in force until it is superseded by a later one inconsistent with it and no longer. It does not stand with reason that parties can by contract preclude themselves from contracting in any particular way; that such a contract once entered into becomes an iron bond which the will of the parties is impotent to annul or modify. When defendant has agreed that he will only contract by writing in a certain way, he does not preclude himself from making a parol bargain to change it, and there is no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing."

In *Westchester Fire Insurance Co.* v. *Earle*, 33 *Mich.* 143, the court said:

"A written bargain is of no higher legal degree than a parol one, and either may vary or discharge the other; and one who has agreed that he will only contract by writing in a certain way, does not preclude himself thereby from making a parol bargain to change it."

Similar decisions are *Canal Company* v. *Ray*, 101 *U. S.* 522; *McFadden* v. *O'Donnell*, 18 *Cal.* 160; *Chicago and Eastern Illinois Railroad Co.* v. *Moran*, 187 *Ill.* 316.

We come, therefore, to the second question, which is, What evidence will be sufficient to justify a finding that the re-

strictive clause was waived? On this question the decisions run all the way from holding that the mere doing of extra work and acceptance thereof in silence will justify a finding that the extra work clause was waived, and permit a recovery therefor, to the position that waiver will not be inferred unless the evidence is clear and convincing. Sample cases of the first kind are *McLeod* v. *Genius,* 31 *Neb.* 1, and *Stubbings Company* v. *World's Columbian Exposition Co.,* 110 *Ill. App.* 210; of the second, *Emslie* v. *Livingston,* 64 *N. Y. Supp.* 259. The doctrine that waiver may be implied from the doing of the extra work without objection and its tacit acceptance is repudiated by many well-considered cases. *Davis* v. *Hospital Association,* 121 *Wis.* 579; *O'Keefe* v. *St. Francis Church,* 59 *Conn.* 551, and the decisions of this court in *Sheyer* v. *Pinkerton Construction Co.,* 59 *Atl. Rep.* 551, and *Landstra* v. *Bunn,* 52 *Vroom* 680, have settled the law on that subject in this state, but have left open the question as to what further is required to create a waiver of the restrictive clause. A glance at some of the decisions in this regard will be of service.

In *Smith* v. *Gugerty,* 4 *Barb.* 614, the contract provided that the houses were to be according to plans and specifications except as directed by the owner or his agent to be otherwise constructed. The contract contained a clause requiring written orders for extra work, but the evidence was very satisfactory that it was waived, for it was shown that Smith not only gave verbal direction for the performance of the extra work, but when Gugerty objected that the agreement required a written order and said he had done enough without a written agreement, and would do no more, Smith called a witness and in his presence and in the presence of the architect said, "Whatever extra work you do for me I will pay you for it," and the architect said, "Mr. Gugerty, that is as good as a written order to you and I will see it right to you." There was other similar evidence; and the court concluded that the inference was clear that the parties mutually waived the provisions requiring a written memorandum for extra or omitted work.

In *Bartlett* v. *Stanchfield, ubi supra,* the claim was for blind drains for which the defendant promised to pay as extras, and the court there affirmed a judgment which awarded the expense of these drains to the contractor.

In *"The Sappho,"* 94 *Fed. Rep.* 545, there was a written contract for repair of a vessel. After stripping the vessel it was found impossible to do the repairs under the contract, and there was an oral agreement that the work should be done in any event. The court found that the extra work clause had been waived, and this on appeal was sustained.

In *Railroad Company* v. *Bridge Company,* 100 *Fed. Rep.* 197, the contract was for the building of a bridge, but it was found there was an error in locating the bridge and the error was corrected without any written agreement. A recovery was there sustained on the theory that this change was not within the clause of extras contemplated.

In *Kilby Mfg. Co.* v. *Fireproofing Co.,* 132 *Fed. Rep.* 957, the court found that the fact that defendant conceded its liability for twenty-six out of thirty-two extra items which had been ordered and had been performed, was sufficient to justify a finding that the contract provision had been waived.

In *Wyman* v. *Hooker,* 2 *Cal. App.* 36, the evidence showed that the extra work was done with the knowledge and consent of defendant and his agent and that they waived the written stipulation that a separate written estimate of extra work should be submitted by orally agreeing to and countenancing the work without written estimates, and the court held that defendant would not be permitted to repudiate the work done that he had consented to.

In *Meyer* v. *Berlandi,* 53 *Minn.* 59, the facts showed that both parties entirely disregarded the stipulations in the contract as to alterations, deviations and extras, not merely as to the mode of ascertaining the values thereon but the requirement that the request therefor should be in writing. They proceeded throughout without any reference to those stipulations and were held therefore to have waived them.

In *O'Keefe* v. *St. Francis Church,* 59 *Conn.* 551, there

were a number of items of extras which were allowed in part and disallowed in part by the Supreme Court of Errors in Connecticut. In its opinion the court lays down what it considers to be the proper rule in this language:

"We suppose the law to be that the contract must control unless its provisions have been clearly waived. Some of the authorities maintain that there must be an express waiver; and all agree or should agree that nothing short of evidence of the most satisfactory character should be permitted to brush aside a contract which the parties have deliberately made. They have determined that certain things shall be proved only by written evidence. To that extent that is the law of this case. It is the duty of the court to enforce that law; unless it clearly appears that the parties themselves have abrogated it. Has it been thus abrogated? The conditions of the contract we are now considering were inserted for the benefit of the owner. There is certainly no presumption that he has waived them. He, and he alone, can waive them. No act or omission by the plaintiff will be of any avail. If the owner has intentionally relinquished a known right, the plaintiff should be able to show it, either in express terms, or by acts and conduct equivalent thereto. Equivocal conduct, or conduct of doubtful import, is not sufficient."

In *Badders* v. *Davis*, 88 *Ala.* 367, the rule was stated by the Supreme Court of Alabama thus:

"We hold that if the defendant promised to pay for extra work done at his request, and if such work was worth more considering both materials and workmanship than the omitted parts for which it was substituted, then plaintiffs are entitled to recover the difference. If he made no promise to pay then the presumption arises that the alterations were agreed to be made and were made without extra charge."

And in *Miller* v. *McCaffrey*, 9 *Pa. St.* 245, one of the earlier decisions on this subject, the court overruled the instructions of the trial judge that a waiver of the extra work clause might be inferred from the defendant's standing by, seeing the work done and adopting it after it was done, and

held this was not sufficient unless there was superadded evidence of an express promise to pay either a certain sum or what the additional work was reasonably worth.

The weight of authority appears to justify the .language of the text in 30 *Am. & Eng. Encycl. L. (2d ed.)* 1283, as follows:

"It has been held that where the contract provides that there shall be no charge for extra work unless a written agreement is made therefor, the contractor cannot recover compensation as for extra work on account of alterations made at the oral request of the builder, but for which no agreement to pay additional compensation is made; but the parties to written working contracts may by parol waive stipulations therein with regard to extra work such as a provision that extra work shall be agreed to in writing, and in such case if the builder (owner) orally requests extra work and promises to pay additional compensation therefor, the contractor may recover such additional compensation."

This may be regarded as an epitome of the last three or four decisions that we have cited; and to the question, What is sufficient evidence to justify a jury in finding that the contract was changed, or its provisions waived in this regard? our answer is that if the evidence satisfactorily shows that the parties distinctly agreed that the alteration should be deemed extra work and that the owner definitely agreed to pay extra for it, and especially if a definite price was fixed in that agreement, this would be sufficient to establish an express contract for such extra work outside of the original contract, or a modification of the contract to the extent of such agreed extra work, and would justify a recovery therefor regardless of the restrictive clause. This rule seems to us fully supported by authorities cited above and to be founded in reason and justice. And such a definite agreement, or series of agreements, the evidence in this cause tended to show. It is true that some of the extra work claimed was done by the mere request of the owner and without any specific agreement that it was to be paid for extra. Such items the trial court

should have excluded, and no doubt would have excluded if the opinion in Landstra. v. Bunn had then been published. But the requests to charge made no distinction between the extra charges based on express agreements and the other items claimed, and therefore were too broad and were properly refused. We have no intention of minimizing or limiting the scope of our previous decision in Landstra v. Bunn. On the contrary we take this opportunity of reaffirming that decision in its entirety. The present case calls for an adjudication on the point that we expressly declared not to be involved in Landstra v. Bunn, viz., "that parties to a contract are at liberty subsequently to contract differently in variation of the original contract." Of this, in the absence of illegality, there is no doubt; and the question, as we have said, becomes one of evidence rather than of limitation upon freedom of contract.

The judgment of the Supreme Court will be reversed and that of the Circuit Court affirmed.

*For affirmance*—SWAYZE, BOGERT, VROOM, JJ.    3.

*For reversal*—THE CHANCELLOR, GARRISON, PARKER, BERGEN, VOORHEES, KALISCH, VREDENBURGH, CONGDON, WHITE, JJ.    9.